## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION | : | Case No. 03-12872 (JLP) |
| | : | |
| Debtors. | : | |
| | : | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FINAL FEE APPLICATION OF PAUL, HASTINGS, JANOFSKY & WALKER LLP
## FOR ALLOWANCE AND PAYMENT OF COMPENSATION
## AND REIMBURSEMENT OF EXPENSES FOR
## THE PERIOD FROM SEPTEMBER 14, 2003, THROUGH NOVEMBER 1, 2004

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Paul, Hastings, Janofsky & Walker LLP, for Period from September 14, 2003, through November 1, 2004 (the "Final Application").

## BACKGROUND

1.     Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), was retained as counsel to the Debtors.  In the Applications, Paul Hastings seeks approval of fees totaling $2,487,427.00 and costs totaling $188,359.14 for its services from March 1, 2004, through May 31, 2004 (the Third Application" or "Third Application Period"); fees totaling $2,789,719.50 and costs totaling $158,620.23 for its services from June 1, 2004, through August 31, 2004 (the "Fourth Application" or "Fourth Application Period"); fees totaling $3,262,821.00 and costs totaling $311,496.43 for its services from September 1, 2004, through November 1,2004 (the "Fifth Application or "Fifth Application Period") and a final allowance of fees totaling $13,620,661.75 and expenses totaling

$916,531.68 from September 14, 2003, through November 1, 2004 (the Final Application Period").

2.       In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Paul Hastings initial reports based on our review, and received responses from Paul Hastings, portions of which responses are quoted herein.

## DISCUSSION

### General Issues

3.       We note that previously, Paul Hastings has not requested fees associated with the Matgen litigation.  Footnote four (4) of the October Application states in part, "...because Applicant has been sued by Magten, it has withdrawn from representing the Debtor in connection with matters relating to Magten.  Greenberg Traurig now represents the Debtor in connection with such matters. Applicant reserves all rights to collect all fees not previously collected incurred in connection with Magten at the appropriate time.  In this Application, as Applicant's last monthly interim applications, Applicant is requesting collection of all fees incurred in connection with Magten not previously collected"  We have no specific objections to the inclusion of these fees.  Any objections regarding

the time entries for the Magten litigation fees are addressed in the paragraphs concerning the Fifth Application Period.

4.      We noted that for the month of October alone, 216 Paul Hastings professionals billed time to this case.  Our concern lies in the number of the professionals at Paul Hastings that billed only a small amount of time on this matter over the life of the case.  While we acknowledge that the bulk of the time was worked by a relatively small number of attorneys, we noted that several Paul Hastings professionals billed a relatively small amount of time to this matter over the life of the case. In order to effectively address this concern, we asked Paul Hastings to provide us with a comprehensive timekeeper summary showing each timekeeper's total contribution of hours from September 14, 2003 through November 1, 2004.  Paul Hastings' response is provided below, and the accompanying chart is attached as Response Exhibit 6.

> Attached as Paul Hastings Supplement 1 is a spreadsheet identifying all timekeepers who have billed time to this Bankruptcy case, and the hours billed by such timekeepers, for the requested period.  Paul Hastings notes that this case required expertise well beyond that of general bankruptcy expertise.  As the fee applications themselves indicate, the following specialized expertise were utilized by the Debtor: (i) bond issuance; (ii) employment matters; (iii) environmental matters; (iv) federal, state and local tax issues; (v) finance matters (DIP financing and exit financing); (vi) fresh start accounting; (vii) litigation; (viii) NASDAQ listing; (ix) note issuance; (x) regulatory issues (FERC and state regulations); and (xi) securities issues (public disclosure, corporate governance, and Sarbannes-Oxley compliance).  As the list indicates, it was necessary to involve different lawyers based on their experience and expertise at different points of the case.  It should be noted that Jess Austin and Karol Denniston closely monitored the use of all lawyers and lawyers were rotated off the file when no longer needed or consulted with on a limited basis when highly specialized legal expertise was required.  This case was handled very efficiently as a highly contested plan was confirmed in thirteen months and a complicated exit involving exit financing, bond and note issuance and NASDAQ listing was successfully effectuated and closed.  This could not have been accomplished without

the Paul Hastings professionals involved.[1]

We appreciate Paul Hastings' response. However, we believe that it is generally inefficient to use an attorney or paraprofessional who bills only a small number of hours to a matter, because of the time that must necessarily be spent in educating each professional about the case. See In re Jefsaba, 172 B.R. 786, 800 n.9 (Bankr. E.D. Pa. 1994)("Requests to compensate for services of professionals whose time is de minimis raises a red flag in our review. . . .When this occurs, we would expect an appropriate deduction be made to the time charged."). Furthermore, we believe that since this case was so complex, as evidenced by the many hours billed by Paul Hastings in this case, it would take longer to familiarize a professional with this case than with most cases. Therefore, we recommend a reduction for the fees of Paul Hastings' professionals who billed less than ten (10) hours over the life of the case, for a reduction of $75,694.00 in fees for the period of September 14, 2003, through November 1, 2004.

## CURRENT INTERIM PERIODS

### Third Interim Period

5.    Paragraph II.D.5. of the Guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Furthermore, the Delaware Local Rules, rule 2016-2(d)(ix), states "....[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."

---

[1] For greater detail as to the activities involved in Debtor's exit from Chapter 11 on the effective date, please see Debtor's Notice of Substantial Consummation of the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

6. We noted several instances in which more than one professional attended a meeting. In two (2) of these instances, the number of participants seems excessive and each professionals' attendance is not adequately explained.

a. On May 6, 2004, four (4) firm member attended a meeting. The total time spent including any preparation time was 5.20 hours[2] for a total fee of $1,415.00.

| 05/06/04 | CCC5 | 2.00 | 400.00 | Prepare for and attend meeting with NOR team regarding the plan and disclosure statement, upcoming hearing, and discovery responses |
| 05/06/04 | KKD | 2.20 | 935.00 | Prepare for and chair team meeting on changes to disclosure statement, claims objections and reconciliation, response to YELP and CELP adversary and discovery issues, response to Harbert discovery requests, response to motions to lift stay and adversary proceedings filed by Comanche Park, Harbert, McGreevey and Magten |
| 05/06/04 | SW9 | 1.00 | 40.00 | NOR team meeting |
| 05/06/04 | BG3 | 1.00 | 40.00 | Attend status conference call |

b. On May 11, 2004, six (6) firm member attended a meeting. The total time spent including any preparation time was 7.80 hours[3] for a total fee of $1,782.00.

| 05/11/04 | DLN2 | 1.30 | 182.00 | Meeting with Paul Hastings attorneys regarding strategy |
| 05/11/04 | KKD | 1.70 | 722.50 | Prepare for and chair telephone conference with client and NOR team regarding disclosure statement and plan process, lift stay motion, claims reconciliation and objections and adversary proceedings |
| 05/11/04 | CCC5 | 1.50 | 300.00 | Prepare for and participate in status telephone conference with the client on case administration |

---

[2] Time for this entry was located in two (2) Project Categories -(i) Business Operations and (ii) Case Administration.

[3] Time for this entry was located in two (2) Project Categories -(i) Business Operations and (ii) Case Administration.

| 05/11/04 | BG3 | 1.20 | 48.00 | Attend NOR team meeting |
| 05/11/04 | SZS | 1.10 | 489.50 | Telephone conference with client and professionals regarding case administration |
| 05/11/04 | SW9 | 1.00 | 40.00 | NOR team meeting |

We asked Paul Hastings to review the above referenced time entries and explain why the attendance of each professional was necessary on each of these occasions, as well as the specific area of expertise each professional provided. Paul Hasting's response is provided in Response Exhibit 1. We appreciate Paul Hastings' response and note that at both meetings several of the attending parties were paralegals and case clerks. We believe the effective use of lower billing professionals contributes to a firm's economical representation of its clients and we have no objection to these fees.

      7.      We noted the following instances in which there was a discrepancy between the amount of time billed and the actual amount of time listed in the time entries:

a.      On April 21, 2004, DBD has a time entry listed as 6.50 hours and $1,722.50. The subparts total 6.00 hours and $1,590.00 for a difference of $132.50.

| 04/21/04 | DBD | 6.50 | 1722.50 | Conference with D. Crawford regarding 30(b)(6) notice, discovery responses, witnesses and documents (1.5); prepare and send letters to E. Meehan regarding discovery issues and scheduling (.5); review documents (4.5). |

b.      On May 11, 2004, JLH has a time entry listed as 3.50 and $1,260.00. The subparts total 1.70 hours and $612.00 for a difference of $648.00.

| 05/11/04 | JLH | 3.50 | 1260.00 | Review response to bankruptcy motion (.20); telephone conference with J. Tyras regarding Federal Energy Regulatory Commission procedures (1.50). |

c.      On May 12, 2004, WAS has a time entry listed as 6.00 hours and $2,700.00. The subparts total 0.60 hours and $270.00 for a difference of $2,430.00.

**FEE AUDITOR'S REPORT** - Page 6
nor FR Paul Hastings 3rd 4th 5th int Final 9.03-11.04.wpd

| 05/12/04 | WAS | 6.00 | 2700.00 | Review documents list (.3); review MPC unit purchase agreement regarding Comanche Park (.3). |

d.      On May 28, 2004, CWR has a time entry listed as 7.50 hours and $1,350.00. The subparts total 7.00 hours and $1,260.00 for a difference of $90.00.

| 05/28/04 | CWR | 7.50 | 1350.00 | Import full text files into Concordance and update case databases (1.40; confer with E. Hass re outstanding projects (.40); revise tag sets in Concordance for production to SEC (1.70); draft cover letters (.30); prepare documents for attorney review (.50); conduct searches in Concordance for audit committee materials (1.40); conduct searches across DolphinSearch database and prepare revised count of documents and images based on SEC's proposed time limitation (1.30) |

We asked Paul Hastings to review its records and advise whether an adjustments in fees should be made in these instances. Paul Hastings' response is provided in quotation marks, below:

Response for the April 21, 2004 time entry: "Paul Hastings agrees that a discrepancy has occurred with respect to this entry and will reduce its fee application request by $132.50."

Response: for the May 11, 2004 time entry: "Paul Hastings agrees that a discrepancy has occurred with respect to this entry and will reduce its fee application request by $648.00."

Response for the May 12, 2004 time entry: "The underlying timesheet shows 3.0 hours for each entry not 0.3. As a result, the 6.00 hours and the $2,700.00 in fees is accurate. W. Andrew Scott (WAS) was responsible for reviewing documents regarding the Comanche Park litigation and related claim. The amount billed is correct. As discussed above, the decimal points in the time descriptions were misplaced."

Response for the May 28, 2004, time entry: "Paul Hastings agrees that a discrepancy has occurred with respect to this entry and will reduce its fee application request by $90.00."

We accept Paul Hastings' response and for these time entries, we recommend a total of $870.50 in fees.

8.    We noted that there may be duplicate time entries resulting in 2.10 additional hours and an additional expense to the estate of $758.50.  The time entries are provided below.

| Date | | | | |
|------|------|------|--------|---|
| 04/01/04 | KKD | 1.70 | 722.50 | Telephone conference with YELP counsel regarding motion for scheduling order (.5); review, revise and finalize responsive pleadings and request for evidentiary hearing date (1.2) |
| 04/01/04 | KKD | 1.70 | 722.50 | Telephone conference with YELP counsel regarding motion for scheduling order (.5); review, revise and finalize responsive pleadings and request for evidentiary hearing date (1.2) |
| 04/15/04 | KLJ | 0.40 | 36.00 | Review pleadings (.2); conference with D. Crawford (.2) |
| 04/15/04 | KLJ | 0.40 | 36.00 | Review pleadings (.2); conference with D. Crawford (.2) |

We asked Paul Hastings to review the above time entries and explain whether these entries relate to discrete instances of a repeated activity or are duplicate billing of the same time.  Paul Hastings responded as follows:

Paul Hastings agrees that the time identified above is duplicative and will reduce its fee application request by $758.50 in fees.

We appreciate Paul Hastings response and recommend a reduction of $758.50 for these fees.

9.    We noted certain meal expenses which appear excessive and warrant additional information regarding which meal was involved.   These expense entries are provided below:

| | | |
|------|------|--------|
| 2/9/04 | K. Denniston (2) | $75.64 |
| 3/2-3/4 | J. Austin (3) | $136.33 |
| 2/25/04 | J. Austin (16) | $495.04 |
| 4/12-13/04 | J. Austin (4) | $235.36 |
| 4/15-16/04 | J. Austin (6) | $600.54 |
| 4/28-30/04 | J. Austin (2) | $152.79 |
| 4/4-6/04 | D. Cartee (5) | $206.80 |
| 3/31/04 | J. K. Denniston (2) | $150.00 |
| 4/7/04 | M. Kelly (3) | $140.41 |

| 4/9/04  | D. Nealy (1)                    | $60.00     |
|---------|---------------------------------|------------|
| 4/11/04 | P. Wolf (1)                     | $64.93     |
| 4/13/04 | P. Wolf (2)                     | $110.00    |
| 4/8/04  | K. Denniston (10) and witnesses | $1,043.84  |
| 4/19/04 | K. Denniston (2)                | $104.07    |
| 4/20/04 | K. Denniston (3)                | $168.50    |
| 5/16/04 | J. Austin (6)                   | $605.47    |
| 5/16/04 | J. Austin (4)                   | $206.42    |
| 4/15/04 | J. Reding (3)                   | $136.33    |

We recommend reasonable ceilings of $15.00, $25.00 and $50.00 for breakfast, lunch and dinner, respectively. For the above referenced meal expenses, we asked Paul Hastings to explain which meal/s of the day the expense included. Paul Hasting's response with accompanying table is provided below.

| Timekeeper | Type | Actual Charge | Total if Recommended Ceiling is Applied |
|---|---|---|---|
| 2/9/04 K. Denniston (2) | *Dinner* | $75.64 | *$75.64* |
| 3/2-3/4 J. Austin (3) | *Dinner* | $136.33 | *$136.33* |
| 2/25/04 J. Austin (16) | *Dinner* | $495.04 | *$495.04* |
| 4/12-4/13 J. Austin (4) | *Dinner* | $235.36 | *$200.00* |
| 4/15-4/16 J. Austin (6) | *Dinner* | $600.54 | *$300.00* |
| 4/28-4/30 J. Austin (2) | *Dinner* | $152.79 | *$100.00* |
| 4/4-6/04 D. Cartee (5) | *Dinner* | $206.80 | *$206.82* |
| 3/31/04 K. Denniston (2) | *Dinner* | $150.00 | *$100.00* |
| 4/7/04 M. Kelley (3) | *Dinner* | $140.41 | *$140.41* |
| 4/9/04 D. Nealy (1) | *Dinner* | $60.00 | *$50.00* |
| 4/11/04 P. Wolf (1) | *Dinner* | $64.93 | *$50.00* |
| 4/13/04 P. Wolf (2) | *Dinner* | $110.00 | *$100.00* |
| 4/8/04 K. Denniston (10) and witnesses | *Dinner* | $1,043.84 | *$500.00* |
| 4/19/04 K. Denniston (2) | *Dinner* | $104.07 | *$100.00* |
| 4/20/04 K. Denniston (3) | *Dinner* | $168.50 | *$150.00* |
| 5/17/04 J. Austin (6) | *Dinner* | $605.47 | *$300.00* |
| 5/16/04 J. Austin (4) | *Dinner* | $206.42 | *$200.00* |
| 4/15/04 J. Reding (3) | *Dinner* | $136.33 | *$136.33* |
| Total | | $4,692.47 | *$3,340.57* |

The table above indicates the meal applicable to the charges reflected and includes a column indicating an acceptable charge for the number of meals in question had the recommended ceilings been applied. Paul Hastings will reduce its request by

$1,351.90 which is the difference between the total actual charges reflected and the total charges had the recommended ceilings been applied.

We accept Paul Hastings' response and recommend a reduction of $1,351.90 in expenses.

10.    We noted several hotel charges which may be excessive.  The expense entries are provided below:

| 2/16/04 | K. Denniston (1 night - Delaware) | 525.80 |
| 2/6-2/7/04 | W. Sullivan (1 night - San Francisco) | 535.80 |
| 4/28-30/04 | J. Austin (2 nights - New York) | $840.00 |
| 5/11-5/13/04 | J. Austin (1 night - New York) | $405.89 |
| 5/2-5/4/04 | P. Wolf (2 nights - New York) | $937.46 |
| 5/3/04 | M. Zuppone (2 nights - Denver) | $580.28 |

The Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper include the following:  Whether the expense is reasonable and economical.  For example, first class and other luxurious travel mode or accommodations will normally be objectionable."  For New York and San Francisco, we recommend a reasonable ceiling of $350.00 per night for hotel stays.  For all other cities in the continental U.S., we recommend a ceiling of $250.00 per night.  For the above referenced lodging expenses, we asked Paul Hastings to advise us as to the nightly rate and any additional charges which may have contributed to the expense.  Paul Hastings' response and accompanying chart are provided below.

| Lodging Dates and Timekeeper | Actual Charge | Total if Recommended Ceiling Applied | Reason for Travel |
| --- | --- | --- | --- |
| 2/16/04 K. Denniston (1 night - Wilmington) | $525.80 | $500.00 | The back-up indicates that the charge was for 2 nights in Wilmington, Delaware.  Client preparation for and attendance at February omnibus hearing |

**FEE AUDITOR'S REPORT** - Page 10
nor FR Paul Hastings 3rd 4th 5th int Final 9.03-11.04.wpd

| | | | |
|---|---|---|---|
| 2/6-2/7/04 W. Sullivan (1 night – San Francisco) | $535.80 | $350.00 | Client preparation for and attendance at mediation in connection with the securities class action |
| 4/28 – 30/04 J. Austin (2 nights – New York) | $840.00 | $700.00 | Client preparation for and attendance at deposition of B. Austin |
| 5/11 – 13/04 J. Austin (1 night – New York) | $405.89 | $350.00 | Preparation for and participation in depositions of B. Dietz, J. Harris, and A. Yearley |
| 5/2-4/04 P. Wolf (2 nights – New York) | $937.46 | $700.00 | Attend to document production and privilege review in connection with discovery requests |
| 5/3/04 M. Zuppone (2 nights – Denver) | $580.28 | $500.00 | Prepare for and attend meeting with SEC Denver enforcement staff |
| Total | $3,825.23 | $3,100.00 | |

The table above identifies not only the lodging charges incurred by timekeeper, but also a description of the matter requiring travel in question. Paul Hastings attempts to comply with these suggested guidelines and will reduce its request by $725.23 to reflect the difference.

We appreciate Paul Hastings' response and recommend a reduction of $725.23 in expenses.

11.     We note disparities in several air fare charges. The questioned entries are provided below:

| | | |
|---|---|---|
| Atlanta to Philadelphia to Atlanta | 2/16/04 K. Denniston | $440.00 |
| Atlanta to Philadelphia to Atlanta | 2/16/04 C. Chayavadhanangkur | $906.20 |
| Atlanta to New York to Atlanta | 3/17/2004 J. Austin | $1,347.70 |
| Atlanta to New York to Atlanta | 4/19-20/04 J. Austin | $1,510.70 |
| Atlanta to New York to Atlanta | 4/18/04 J. Austin | $1,510.70 |
| Atlanta to New York to Atlanta | 4/4/04 D. Cartee | $1,322.70 |
| Atlanta to New York to Atlanta | 4/7/04 M. Kelly | $1,332.71 |
| Atlanta to New York to Atlanta | 4/19/04 P. Wolf | $1,510.70 |
| Atlanta to New York to Atlanta | 4/11-5/13/04 J. Austin | $1,510.70 |
| Atlanta to New York to Atlanta | 3/22/04 K. Denniston | $1,510.70 |
| Atlanta to New York to Atlanta | 4/7/04 K. Denniston | $1,510.70 |
| Atlanta to New York to Atlanta | 4/19/04 K. Denniston | $1,510.70 |
| Atlanta to New York to Atlanta | 5/2-5/4/04 P. Wolf | $1,497.70 |
| Atlanta to New York to Atlanta | 4/7/04 D. Nealy | *$933.71* |
| Atlanta to New York to Atlanta | 4/5/04 B. Gilliespie | *$808.71* |

Atlanta to New York to Atlanta          4/16/04 A. Scott                    *$447.70*

We asked Paul Hastings to explain why these similar itineraries reflect such disparate fares. Paul Hastings' response is provided below and the chart referred to in the response is provided in Response Exhibit 2.

> It is Paul Hastings' policy to book the lowest priced airline tickets that are fully changeable and fully refundable. This policy is to ensure that airline reservations can be changed (with or without significant advance notice) to accommodate changes in the court's schedule and changes necessitated by the client as well as opposing counsel. The fares for fully changeable and fully refundable airline tickets fluctuate daily and would not represent the lowest fare available for a particular desired travel schedule that did not provide this flexibility (for example, internet only or severely discounted airline reservations that are nonrefundable, nontransferable and require a penalty payment for itinerary changes). The table above identifies not only the travel charges incurred by timekeeper, but also a description of the matter requiring the travel in question.

We accept Paul Hastings' response and have no objection to these expenses.

        12.    We noted the following airfare which appears excessive.

Atlanta to Phoenix to Atlanta          5/16-5/18/04 J. Austin              $2,448.21

Our search on the internet revealed non-stop fully refundable coach fares for this itinerary on Delta Airlines for under $1,600.00. We asked Paul Hastings to explain why the above fare was so high and whether any attempt was made to purchase this ticket in advance. Paul Hastings responded as follows:

> It is Paul Hastings' policy to book the lowest priced airline tickets that are fully changeable and fully refundable. This policy is to ensure that airline reservations can be changed (with or without significant advance notice) to accommodate changes in the court's schedule and changes necessitated by the client as well as opposing counsel. The fares for fully changeable and fully refundable airline tickets fluctuate daily and would not represent the lowest fare available for a particular desired travel schedule that did not provide this flexibility (for example, internet only or severely discounted airline reservations that are nonrefundable, nontransferable and require a penalty payment for itinerary changes). The table above *(attached as Response*

*Exhibit 2)* identifies not only the travel charges incurred by timekeeper, but also a description of the matter requiring the travel in question. In order to resolve this matter, Paul Hastings is willing to reduce its request for reimbursement by $848.21.

We appreciate Paul Hastings' response and recommend a reduction of $848.21 in expenses.

13.    We noted that Paul Hastings seeks reimbursement totaling $5,404.50 for "Taxi/Ground Transportation". We asked Paul Hastings to provide a breakdown of these charges including the origin and destination points for each trip, and the mode of transportation (rail/taxi/car service) utilized. Paul Hastings' provided the following response as well as a chart[4] which is attached hereto as Response Exhibit 3.

> The chart, attached hereto as Response Exhibit 2, reflects a number of charges for local ground transportation services (i.e. travel from office to home). While the services were incurred to accommodate late-hour travel and security issues, Paul Hastings will reduce its requests by these amounts to address the fee examiner's concerns on this matter. In addition, despite diligent inquiry, Paul Hastings was unable to provided the detailed information requested with respect to a number items listed on the chart. Accordingly, Paul Hastings will reduce its request by these amounts to the extent the detailed information requested by the fee examiner was not available. As reflected in the column labeled "Voluntary Reduction", Paul Hastings will reduce its request by an aggregate of $2,105.91. The remaining charges shown on the chart reflect ground transportation directly related to travel necessitated by the Debtor's bankruptcy proceeding. All charges for car service reflect a negotiated contract rate that is less than what would be charged for normal taxi service.

We appreciate Paul Hastings' response and recommend a reduction of $2,105.91 in expenses.

14.    We noted that Paul Hastings seeks reimbursement for secretarial overtime in the amount of $2,100.00. Paragraph II.E.7. of the Guidelines provides that "[Overhead] includes word processing, proofreading, secretarial and other clerical services...." We asked Paul Hastings why the estate should be burdened with this expense. Paul Hastings' response is provided below.

---

[4] This chart contains transportation charges for both the 3rd and 4th periods and is referred to by Paul Hastings as Response Exhibit 2.

> Paul Hastings agrees that the reimbursement for secretarial overtime should not be included and will reduce its fee application request by $2,100.00.

We appreciate Paul Hastings' response and recommend a reduction of $2,100.00 for this expense.

15.     We noted that Paul Hastings seeks reimbursement of $250.00 for the following administrative charge.

Outside Professional Services - Lexis-Nexis-Administrative Charges                $250.00

This charge appears to be in addition to the $43,176.50 in "Lexis/Online Services" for which reimbursement is also requested.  We asked Paul Hastings to explain this administrative charge further and whether it is of benefit solely to this bankruptcy estate.  Paul Hastings responded as follows:

> Paul Hastings agrees to reduce its fee application request by $250.00.

We appreciate Paul Hastings' response and recommend a reduction of $250.00 in expenses.

16.     Thus, for the Third Application Period, we recommend fees totaling $2,485,798.00 ($2,487,427.00 minus $1,629.00) and expenses totaling $180,977.89 ($188,359.14 minus $7,381.25) for Paul Hastings' services from March 1, 2004, through May 31, 2004.

<u>Fourth Interim Period</u>

17.     Paragraph II.D.5. of the Guidelines provides that  "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Furthermore, the Delaware Local Rules, rule 2016-2(d)(ix), states "....[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."

18.     We noted several instances in which more than one professional attended a

conference call. On four (4) of these occasions the number of professionals and the ultimate cost to the estate appear excessive.

a.     On June 28, 2004, four (4) firm member participated in a conference call. The total time spent including any preparation time was 2.90 hours for a total fee of $1,634.00.

| 06/28/04 | DLM | 2.00 | 1100.00 | ............; telephone conference with D. Christensen, K. Strong, T. Knapp, et al. (.90);........... |
| 06/28/04 | GAC | 1.80 | 945.00 | Prepare for and attend conference call with T. Knapp, J. Austin, D. Christensen, K. Strong, et al. regarding mediation strategy (.70);............. |
| 06/28/04 | JAR | 0.60 | 363.00 | ...........; telephone conference with client regarding team for mediation process (.30). |
| 06/28/04 | JHA | 2.00 | 1180.00 | .........; conference call with D. Morrow, G. Carter, T. Knapp and counsel of officer and director defendants to strategize for mediation (1.0). |

b.     On July 9, 2004, four (4) firm members participated in conference call. The total time spent including any preparation time was 4.80 hours for a total fee of $2,599.00.

| 07/09/04 | JHA | 1.50 | 885.00 | Conference call with lenders' counsel to discuss indenture issues (1.0);......... |
| 07/09/04 | KC | 1.30 | 624.00 | Participate in conference call with J. Austin, M. Kahn, J. Tyras, S. Saks, C. Hood and G. Owens regarding exit financing and First Mortgage Bonds |
| 07/09/04 | MRK | 2.50 | 1525.00 | Prepare for and participation in telephone conference concerning financing (1.5);......... |
| 07/09/04 | SRK | 1.50 | 705.00 | Prepare for and attend conference call regarding proposed debt offering and credit facility with M. Kahn, K. Conboy, J. Austin, J. Tyras and Dewey Ballantine (1.0 hour);.......... |

c.     On August 11, 2004, four (4) firm member participated in a conference call. The total time spent including any preparation time was 4.20 hours for a total fee of $1,485.00.

| 08/10/04 | SZS | 0.50 | 237.50 | Prepare agenda for conference regarding termination |

of certain defined benefit plans and COBRA issues

| 08/11/04 | KKD | 1.70 | 722.50 | Telephone conference with K. Kliewer, S. Starr, L.Noggle and M. Poerio regarding termination of nonqualified plans, COBRA and 401(k) matters (1.20);........... |
| 08/11/04 | CCC | 1.00 | 235.00 | Telephone conference with K. Kliewer, K. Denniston, M. Poerio, and L. Noggle regarding termination of certain non-qualified plans and the market value of certain insurance policies |
| 08/11/04 | LMN | 1.60 | 424.00 | Telephone conference with K. Denniston, K. Kliewer, S. Starr, and M. Poerio regarding motion to terminate the Benefit Restoration Plan, Cash Balance Supplemental Executive Retirement Plan, Pension Equalization Plan, and Long Term Incentive Plan and regarding Netexit's COBRA and 401(k) plans (1.0);.......... |
| 08/11/04 | SZS | 0.50 | 237.50 | Telephone conference with K. Kliewer, M. Poerio and K. Denniston regarding benefit plan termination issues. |

d.    On August 16, 2004, four (4) firm member participated in a conference call.  The total time spent including any preparation time was 4.20 hours for a total fee of $2,409.50.

| 08/16/04 | DLM | 1.40 | 770.00 | Telephone conference with T. Knapp, J. Austin, S. Kaleczyc, et al. (1.10);......... |
| 08/16/04 | GAC | 2.70 | 1417.50 | Conference call with T. Knapp, S. Kaleczyc, J. Austin, et al. regarding strategy and status of settlement (.70);......... |
| 08/16/04 | JAR | 1.40 | 847.00 | Conference call with Montana counsel, bankruptcy team, securities team and client regarding hearing 8/13 before Judge Haddon; bankruptcy proceedings, securities class, McGreevey class, opt outs, creditors' committee, settlement, attorney fees, practical issues and class period |
| 08/16/04 | JHA | 1.00 | 590.00 | Conference call with T. Knapp, G. Carter and S. Kaleczyc to discuss developments with Judge Haddon |

and alternative to resolving issues with McGreevey plaintiffs

We asked Paul Hastings to review the above referenced time entries and explain why the attendance of each professional was necessary on each of these occasions, as well as the specific area of expertise each professional provided. Paul Hastings' response is provided in Response Exhibit 4, attached hereto. We appreciate Paul Hastings' response. However, the response does not prove that the attendance of both partners GAC and JAR was necessary on two (2) occasions (June 28, 2004, and August 16, 2004). In describing these two partners' responsibilities, the response states that GAC and JAR were both "... responsible for litigating and advising the client in connection with the McGreevey Litigation, including coordinating representation of the client in the various securities lawsuits including the McGreevey Litigation and the NorthWestern Securities Class Action." The response fails to differentiate or distinguish the separate duties or roles of these two professionals. Accordingly, we recommend a reduction of the time spent by the professional with the lowest hourly rate at these two conferences, for a reduction of $735.00 in fees.

19.    Likewise we noted that five (5) Paul Hastings' professionals prepared for and attended a hearing on August 25, 2004, for a total of 73.50 hours and a cost to the estate of $23,208.00.

| 08/25/04 | JHA | 16.00 | 590.00 | 9,440.00 | Finalize preparation for and participate in confirmation hearing (14.0);........ |
| 08/25/04 | KKD | 15.70 | 425.00 | 6,672.50 | Prepare for and attend confirmation hearing |
| 08/25/04 | CCC | 14.50 | 235.00 | 3,047.50 | Prepare for and attend hearing including coordinating exhibits and slideshow and meeting with parties to discuss proposed changes to plan and disclosure statement |
| 08/25/04 | PCW | 14.00 | 215.00 | 3,010.00 | Plan confirmation hearing |

**FEE AUDITOR'S REPORT** - Page 17
nor FR Paul Hastings 3rd 4th 5th int Final 9.03-11.04.wpd

| 08/25/04 | DLN | 15.30 | 145.00 | 2,218.50 | Prepare for and attend confirmation hearing and assist attorneys throughout hearing (14.0);........... |

In addition to the Paul Hastings contingent, the debtor was represented at this hearing by three (3) professionals from Greenberg Traurig, LLP ("Greenberg"). In the time entries referenced above, Ms. Nealy and Ms. Chayavadhanangkur provide some detail regarding their duties and responsibilities; however the other three (3) professionals' time entries offer no such information. We asked Paul Hastings to explain the responsibilities and duties of Mr. Wolf, Ms. Denniston, and Mr. Austin as well as why the attendance of all five (5) professionals was necessary at this hearing. Paul Hastings responded as follows:

> Multiple professionals attended hearings only when necessary to efficiently manage the case and/or specific matters presented on the hearing's agenda. The contested confirmation of the Debtor's Plan was addressed at the August 25, 2004 hearing, and continued to the October 6, 2004 hearing. In particular, as detailed below, multiple attorneys attended the hearing to address particular matters at issue, including objections and presentation of evidence. In addition, Paul Hastings utilized paraprofessionals to ensure that hearing notebooks, research, exhibits and orders are readily accessible during the hearings. Paul Hastings believes that in light of the contested nature of the confirmation hearing the August 25, 2004 hearing was handled in the most efficient manner possible minimizing the time spent in Court by not only Paul Hastings but the other professionals as well. A copy of the agenda for the August 25, 2004 hearing is attached hereto as Response Exhibit 2 which shows twenty-one (21) objections to conformation. At this hearing, NOR presented four (4) witnesses and prepared over a hundred exhibits. As requested, the following is an identification of the professionals identified as having attended hearings with a brief description of their expertise or responsibilities:

> Jesse H. Austin, III (JHA) – Partner, Lead bankruptcy partner responsible for overall bankruptcy proceeding, negotiating and implementing strategy for Debtor's restructuring efforts and negotiating with the Debtor's lenders and subdebtholders. At the August 25, 2004 hearing, Mr. Austin was responsible for presenting to the Court the Debtor's settlement with Harbert Management Corporation and Wilmington Trust Company and its impact on the Debtor's Plan. Mr. Austin was also responsible for examining and cross-examining witnesses in connection with the Debtor's valuation and the objections to such valuation filed by certain equity

holders.

Karol K. Denniston (KKD) – Of Counsel, Lead bankruptcy professional responsible for handling the agenda and advising the Court of the resolution of certain objections. Ms. Denniston was responsible for addressing confirmation objections and matters relating to the approval of the Second Amended and Restated Disclosure Statement and Plan of Reorganization as well as the preparation and examination of witnesses related to the Debtor's business operations. Ms. Denniston was also responsible for presenting evidence regarding compliance with the Bankruptcy Code in connection with solicitation, voting tabulations and Plan provisions.

Carolyn Chayavadhanangkur (CCC) – Associate, Bankruptcy associate primarily for researching and drafting pleadings, preparing witnesses and conducting research. In particular, at the confirmation hearing. Ms. Chayavadhanangkur met with parties-in-interest and coordinated the incorporation of comments received from such parties to the Second Amended and Restated Disclosure Statement and Summary Disclosure Statement.

Philip C. Wolf (PCW) – Associate, Bankruptcy associate primarily responsible for coordinating research and presentation of evidence ensuring that the Debtor's presentations at the confirmation hearing were efficiently managed. In particular, at the confirmation hearing, Mr. Wolf coordinated the entry into evidence of approximately 100 exhibits.

We appreciate Paul Hastings' response. However, in light of the fact that the debtor was also represented by three (3) Greenberg professionals, the response fails to establish the necessity of all five (5) of its professionals' attendance at this hearing. Thus, we recommend a reduction of the time spent on this hearing by the professional with the lowest billing rate, for a reduction of $3,010.00 in fees.

20.    We noted the following instances in which there was a discrepancy between the amount of time billed and the actual amount of time listed in the time entries:

a.    On August 6, 2004, SFW had a time entry listed as 3.50 hours for a total fee of $1,277.50. The sub-parts total 3.00 hours and $1,095.00 for a difference of $182.50.

08/06/04    SFW    3.50    1277.50    Review AT&T documentation (.50); review AT&T

> and Prairie Fire claims (.50); telephone conference with B. Lafave regarding AT&T, prepare draft notice letter to AT&T (2.0).

b.    On August 23, 2004, PDLG had a time entry listed as 5.00 hours for a total fee of $1,000.00. The sub-parts total 4.50 hours and $900.00 for a difference of $100.00.

| 08/23/04 | PDLG | 5.00 | 1000.00 | Copy data and images to network (1.0); update image links; prepare filter (.5); prepare instructions on applying the filter (.5); conference with DolphinSearch re online redactions (.5); review sample data and images from Dolphin (2.0). |

c.    On August 3, 2004, TRP had a time entry listed as 0.80 hours for a total fee of $516.00. The sub-parts total 0.60 hours and $387.00 for a difference of $129.00.

| 08/03/04 | TRP | 0.80 | 516.00 | Prepare for and participate in conference call with NOR and Paul Hastings teams to update status of financing plans (0.3); conference with J. Tyras to discuss offering memo (0.3). |

We asked Paul Hastings to review its records and advise whether adjustments in fees should be made in these instances. In its response, Paul Hastings agreed that reductions were in order for all three of these time entries. Accordingly, we recommend a reduction of $411.50 in fees.

21.    We noted that there may be duplicate time entries resulting in 1.90 additional hours and an additional expense to the estate of $85.50. The time entries are provided below.

| 07/01/04 | Casey Allison | Prepare claims binders | 1.90 | 45.00 | $85.00 |
| 07/01/04 | Casey Allison | Prepare claims binders | 1.90 | 45.00 | $85.00 |

We asked Paul Hastings to review the above time entries and explain whether these entries relate to discrete instances of a repeated activity or are duplicate billing of the same time. Paul Hastings responded as follows:

> Paul Hastings agrees that the time identified above is duplicative and will reduce its fee application request by $85.00 in fees.

**FEE AUDITOR'S REPORT** - Page 20
nor FR Paul Hastings 3rd 4th 5th int Final 9.03-11.04.wpd

We appreciate Paul Hastings response and recommend a reduction of $85.00 in fees.

22.    We noted certain meal expenses which appear excessive and warrant additional information.  See Exhibit A.  We recommend reasonable ceilings of $15.00, $25.00 and $50.00 for breakfast, lunch and dinner, respectively.  We asked Paul Hastings to review Exhibit A and explain which meal/s of the day the expense included.  In addition, please explain whether the meals charged on May 25, and 26, 2004, were duplicated.  Paul Hastings' response is provided below and in the chart attached hereto as Response Exhibit 5.

> The table above *(now, response Exhibit 5)* indicates the meal applicable to the charges reflected and includes a column indicating an acceptable charge for the number of meals in question had the recommended ceilings been applied.  Paul Hastings will reduce its request by $1,400.60 which is the difference between the total actual charges reflected and the total charges had the recommended ceilings been applied.

We appreciate Paul Hastings' response and note that, as well as the recommended allowance, the chart reflects a total reduction for two (2) meals that were duplicated.  Accordingly, we accept Paul Hastings' calculations and recommend a reduction of $1,400.60 in expenses.

23.    We noted the following hotel charges which may be excessive.

| | | |
|---|---|---|
| 6/8-6/10/04 | J. Austin (3 nights - New York) | $1,303.74 |
| 6/20-6/23/04 | J. Austin (2 nights - New York) | $1,018.37 |
| 6/8/04 | K. Shryock (1 night - New Jersey) NY Booked) | $315.80 |
| 6/2-6/3/04 | J. Austin (1 night - Chicago) | $399.00 |
| 7/25-7/29/04 | M. Arnold (4 nights - New York) | $1,508.60 |
| 8/5/04 | J. Austin (1 night - New York) | $375.21 |
| 6/23/04 | K. Shryock (1 night - New York) | $426.57 |

7/19-7/21/04   J. Austin (2 nights - New York)                 $845.08

7/21-7/23/04   M.Kelley (2 nights - New York)                 $1,176.76

The Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper

include the following:  Whether the expense is reasonable and economical.  For example, first class

and other luxurious travel mode or accommodations will normally be objectionable."  For New York

and San Francisco, we recommend a reasonable ceiling of $350.00 per night for hotel stays.  For all

other cities in the continental U.S., we recommend a ceiling of $250.00 per night.  We asked Paul

Hastings to provide additional information so that we could assess these charges for reasonableness.

Paul Hastings provided the following response and accompanying chart.

| Lodging Dates and Timekeeper | Actual Charge | Total if Recommended Ceiling Applied | Reason for Travel |
|---|---|---|---|
| 6/8-10/04 J. Austin (3 nights – New York) | $1,303.74 | $1,050.00 | Prepare for and attend meeting regarding offer to purchase company |
| 6/20-23/04 J. Austin (2 nights – New York) | $1,018.37 | $700.00 | Prepare for and attend June omnibus hearing |
| 6/8/04 K. Shryock (1 night – New Jersey) | $315.80 | $250.00 | Prepare for and attend first day hearing in Cornerstone bankrupties |
| 6/2-3/04 J. Austin (1 night – Chicago) | $399.94 | $250.00 | Prepare for and attend meeting with client and Lazard to discuss confirmation issues and strategies |
| 7/25-29/04 M. Arnold (4 nights – New York) | $1,508.60 | $1,400.00 | Prepare for and attend depositions |
| 8/5/04 J. Austin (1 night – New York) | $375.21 | $350.00 | Prepare for and attend deposition of B. Anderson and J. Harris; conferences with Harbert and Wilmington Trust |
| 6/23/04 K. Shryock (1 night – New York) | $426.57 | $350.00 | Prepare for and attend hearing on cash collateral in Cornerstone bankruptcy; meet with Cornerstone committee |
| 7/19-21/04 J. Austin (2 nights – New York) | $845.08 | $700.00 | Prepare for and attend deposition of M. Nieman and B. Bird |
| 7/21-23/04 M. Kelley (2 nights – New York) | $1,176.76 | $700.00 | Coordinate document production |
|  | $7,370.07 | $5,750.00 |  |

The table above identifies not only the lodging charges incurred by timekeeper, but

also a description of the matter requiring travel in question.  Paul Hastings attempts to comply with these suggested guidelines and will reduce its request by $1,620.07 to reflect the difference between the actual charges incurred and the total amount if the recommended ceilings are used.

We appreciate Paul Hastings' responses and recommend a reduction of $1,620.07 in expenses.

24.    We noted the following airfares which appear excessive.

| | | | |
|---|---|---|---|
| Atlanta to Phoenix to Atlanta | 5/16/04 | C. Chayavadhanangkur | $2,448.21 |
| Atlanta to Phoenix to Atlanta | 5/16/04 | K. Denniston | $2,448.21 |
| Atlanta to Phoenix to Atlanta | 8/23/04 | J. Austin | $1,998.20 |

We asked Paul Hastings to explain why the above fares were so high and whether any attempt was made to purchase these tickets in advance.  Paul Hastings' response, as well as the accompanying chart is provided below.

| Flight Segments | Timekeeper | Charge | Reason for Travel |
|---|---|---|---|
| Atlanta to Phoenix to Atlanta | 5/16/04 C. Chayavadhanangkur | $2,448.21 | Prepare for and attend hearing regarding disclosure statement |
| Atlanta to Phoenix to Atlanta | 5/16/04 K. Denniston | $2,448.21 | Prepare for and attend hearing regarding disclosure statement |
| Atlanta to Phoenix to Atlanta | 8/23/04 J. Austin | $1,998.20 | Prepare for and attend hearing regarding second amended disclosure statement and confirmation |
| Total | | $6,894.62 | |

It is Paul Hastings' policy to book the lowest priced airline tickets that are fully changeable and fully refundable.  This policy is to ensure that airline reservations can be changed (with or without significant advance notice) to accommodate changes in the court's schedule and changes necessitated by the client as well as opposing counsel.  The fares for fully changeable and fully refundable airline tickets fluctuate daily and would not represent the lowest fare available for a particular desired travel schedule that did not provide this flexibility (for example, internet only or severely discounted airline reservations that are nonrefundable, nontransferable and require a penalty payment for itinerary changes).  The table above identifies not only the travel charges incurred by timekeeper, but also a description of the matter requiring

the travel in question.

We appreciate Paul Hastings' response. However, we note that a similar airfare expense was questioned in the initial report for the Third Interim Period[5]. In that instance, we advised Paul Hastings that our search on the internet revealed non-stop fully refundable coach fares for this itinerary for under $1,600.00. In its response to the initial report for the Third Interim Period, Paul Hastings offered to "reduce its request for reimbursement by $848.21" (resulting in a total cost to the estate of $1,600.00). To be consistent, we recommend that the same $1,600.00 standard apply to the three (3) airfares above. Accordingly, we recommend a reduction of $2,094.62 in expenses.

25. We noted that Paul Hastings seeks reimbursement totaling $4,439.61 for "Taxi/Ground Transportation". We asked Paul Hastings to provide a breakdown of these charges as well as what mode of transportation (rail/taxi/car service) was utilized. Paul Hasting's response is provided below and the accompanying chart is provided in Response Exhibit 3[6].

> The chart, attached hereto as Response Exhibit 4, reflects a number of charges for local ground transportation services (i.e. travel from office to home). While the services were incurred to accommodate late-hour travel and security issues, Paul Hastings will reduce its requests by these amounts to address the fee examiner's concerns on this matter. In addition, despite diligent inquiry, Paul Hastings was unable to provided the detailed information requested with respect to a number items listed on the chart. Accordingly, Paul Hastings will reduce its request by these amounts to the extent the detailed information requested by the fee examiner was not available. As reflected in the column labeled "Voluntary Reduction", Paul Hastings will reduce its request by an aggregate of $1,521.74. The remaining charges shown on the chart reflect ground transportation directly related to travel necessitated by the Debtor's bankruptcy proceeding. All charges for car service reflect a negotiated

---

[5]$2,448.21 for a round trip for J. Austin from Atlanta to Phoenix in May 2004. *See* ¶12, *supra*

[6]*See* FN 4 *supra*.

contract rate that is less than what would be charged for normal taxi service.

We appreciate Paul Hastings' response and recommend a reduction of $1,521.74 in expenses.

26.     We noted that Paul Hastings' June monthly invoice contains an expense for cell phone charges in the amount of $278.02 under the category of "Plan and Disclosure Statement".  The Guidelines, Paragraph II.E. states in part, "[a]ny expense for which reimbursement is sought must be actual and necessary and supported by documentation as appropriate."  We asked Paul Hastings to explain whether these cell phone charge are made up of actual charges , attributable solely to the estate, or if other charges were included.  Paul Hastings' response is provided below.

> The cell phone charges reflect the actual cell phone charges incurred by the timekeepers for calls made on behalf of the Estate.

We appreciate Paul Hastings' response and have no objection to this expense.

27.     Thus, for the Fourth Application Period, we recommend fees totaling $2,785,478.00 ($2,789,719.50 minus $4,241.50) and expenses totaling $151,983.20 ($158,620.23 minus $6,637.03) for Paul Hastings' services from June 1, 2004, through August 31, 2004.

<u>Fifth Interim Period</u>

28.     Paragraph II.D.5 of the Guidelines states "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour.  Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a de minimis amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.  Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should

identify the subject of the hearing or conference." We note that three (3) Paul Hastings timekeepers were particularly remiss in this regard. The time entries at issue are provided on Exhibit A attached hereto. We asked Paul Hastings to review Exhibit A and for each of the time entries listed please provide detail sufficient for a proper analysis of the same, including, but not limited to, all tasks performed in the time frame allotted. Paul Hastings provided a chart of these time entries with additional detail provided. We have reviewed the chart provided by Paul Hastings and believe that the information provided is in compliance with the Guidelines. See paragraph 35, below, for further discussion.

29.    We note several time entries wherein the activity described appears to be clerical in nature.

| 09/02/04 | CWR | 3.50 | 185.00 | 684.50 | . . . convert non-searchable pdf files to searchable pdf (.40); upload text files to Concordance database (2.10); annotate database fields (1.00) |
| 09/17/04 | CWR | 2.00 | 185.00 | 370.00 | File management (.5); prepare documents for scanning and coding (.5); import text files to case Concordance database and annotate data fields (.5); organize hard copy files (.5); . . . |
| 09/22/04 | CWR | 1.00 | 185.00 | 185.00 | Organize hard copy and electronic data files (.5); prepare documents for scanning and coding (.5). . . |
| 09/30/04 | CWR | 1.40 | 185.00 | 259.00 | Scan documents to pdf (1.0); convert non-searchable pdf files to searchable (.4) . . . |

Paragraph II.E.7 of the Guidelines states "[f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical

services, . . ."  We asked Paul Hastings to explain why an exception should be made in this instance.

Paul Hastings responded as follows:

> Mr. Roddy is a litigation support specialist with skills not necessarily available from secretaries and file clerks.  The Debtor is a defendant in several class action lawsuits and the subject of an extensive SEC investigation.  Those proceedings required the production (through multiple discovery requests) and management of tens of thousands of the Debtor's documents requiring the use of discovery and document management litigation software.  In order to effectively utilize this software, each document had to be scanned and coded with discrete fields and keywords to provide for searchable text. These activities required specialized data entry and management and are not clerical in nature.  Mr. Roddy has the necessary expertise to allow him to efficiently manage the software application and analyze the documents so lawyers can efficiently search the text through codes Mr. Roddy develops.

We appreciate Paul Hastings' response.  However, software management and data entry involving document scanning and coding is normally considered part of a firms's overhead.  Thus we recommend a reduction of $1,461.50 in fees.

30.    Paragraph II.D.5. of the Guidelines provides that  "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Furthermore, the Delaware Local Rules, rule 2016-2(d)(ix), states "....[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."

31.    We noted several  instances in which more than one professional attended a conference call.  On four (4) of these occasions the number of professionals and the ultimate cost to the estate appear excessive.  The time entries are provided on Exhibit B attached hereto.  We asked Paul Hastings to review Exhibit B and for each instance sited, explain why the attendance of each professional was necessary, as well as the specific area of expertise each professional provided.  Paul Hastings' response is provided in Response Exhibit 7.  We appreciate Paul Hastings' response.

However, in one instance the explanation does not establish why multiple professionals were necessary. The response fails to prove that the attendance of all nine (9) professionals was necessary at the November 1, 2004 closing. Accordingly, we recommend a reduction of time spent preparing and attending this closing of one-third (equal to three [3] professionals) for a reduction of $10,981.00 in fees.

32.    Likewise, we noted two hearings in which more than one Paul Hasting's professional attended.

a.    On 09/15/2004, JHA and KKD spent 5 hours and for a total fee of $2,537.50 attending the same hearing.

| 09/15/04 | JHA | 2.50 | 590.00 | 1,475.00 | Prepare for and attend hearings on September 15, 2004 |
| 09/15/04 | KKD | 2.50 | 425.00 | 1,062.50 | Prepare for and attend omnibus hearing (2.5) . . . |

b.    On October 8, 2004, professionals CCC, JHA, KKD and JCT spent 8.30 hours for a total fee of $3,404.50 attending the same hearing.

| 10/08/04 | CCC | 2.30 | 540.50 | Prepare for and attend teleconference regarding Judge Case's oral ruling on confirmation of the plan of reorganization |
| 10/08/04 | JHA | 4.50 | 2655.00 | ...........; attend telephone hearing with Court regarding confirmation hearing (1.60);......... |
| 10/08/04 | KKD | 4.00 | 1700.00 | Participate in hearing regarding ruling on plan confirmation (1.9);............ |
| 10/08/04 | JCT | 14.00 | 6230.00 | Attend confirmation hearing (2.5);............ |

For each of these hearings, we asked Paul Hastings to explain why the attendance of each professional was necessary, as well as the specific area of expertise each professional provided. Paul Hastings' response is provided in Response Exhibit 8. We appreciate Paul Hastings' response and have no objection to these fees.

33.    We noted that during the application period 21 professionals spent a total of 629.20 hours for a total expense to the estate of $282,171.00 drafting, reviewing, commenting on and revising an "offering memorandum".  The time entries are provided on Exhibit C attached hereto. The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider . . .whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; . . ."  We noted that in the narrative portion of the Application, Paul Hastings' briefly discusses the "Offering Memorandum" and the purpose behind this document.  However, this brief description does not, in and of itself, clarify the need for the amount of time and man power devoted to this document.  We asked Paul Hastings to explain why it was necessary for 21 professionals to spend 629.20 hours with regard to this project.  Additionally, we asked Paul Hastings to explain the different areas of expertise each professional provided to the project.  Paul Hastings' response is provided in Response Exhibit 9. While we appreciate Paul Hasting's response, we believe the response fails to establish the distinct role played by all of the professionals who participated on this project.  More specifically, in its response Paul Hastings states that 12 of the 21 professionals who participated in the preparation of this memorandum ". . . facilitated comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure."

Of these twelve professionals performing the same task, one is from the litigation department, one from the tax department, one from the regulatory department, and nine are from the corporate department, Asa Danes, Kevin Evans, Kelly Hodges, Kiara Hotte, Scott Kline, Thomas McGovern, Timothy Muldoon, Omri Sachs and Jonathan Tyras.  The response does not provide any distinction between the functions of these nine professionals from the corporate department.  Nor does the

response substantiate the need for nine corporate department professionals to work on this project. However, despite Paul Hastings lack of description in its response for the work performed by Jonathon Tyras, we note that professional Tyras billed the majority[7] of the time to this project and, based on his substantial contribution to the offering memorandum, we will not be including his time in our reduction calculations.

We believe the total combined fees billed by the remaining eight corporate department professionals should be reduced. Of these remaining eight (8) professionals, five[8] (5) billed less than 20 hours to this matter. Thus, we recommend a reduction of the total combined fees for the professionals billing less than 20 hours to the project, for a reduction of $6,565.50[9] in fees.

34.     Furthermore, upon review of the additional detail provided by Paul Hastings[10], we noted that timekeeper M. Schwartz billed an additional 6.50 hours and $2,600.00 on this offering memorandum. The pertinent time entries are provided in Exhibit D, attached hereto. Paul Hastings did not explain the necessity of M. Schwartz' involvement in the project, in its Response Exhibit 9: perhaps it was not aware of M Schwartz' involvement. Thus, in addition to the reduction recommended above, we also recommend a reduction of the 6.50 hours billed by M. Schwartz, for a reduction of $2,600 in fees.

---

[7] Jonathan C. Tyras billed 231 hours and $102,795.00 in fees to this project during the application period.

[8] One of these professionals, Kevin Evans, billed 1 (one) hour for the life of the case, and thus a reduction for his time was recommended in paragraph four (4), above.

[9] Asa Danes billed 24 hours and $8,880; Kevin Evans 1 hour and $535; Kelly Hodges 4.60 hours and $1,840; Kiara Hotte 10.10 hours and $3,080.50; Scott Kline 1.5 hours and $667.50; Thomas McGovern 71.90 hours and $21,929.50; Timothy Muldoon 40.10 hours and $13,433.50; Omri Sachs 2.30 hours and $977.50; for a total of $51,343.50/8= $6,417.94.

[10] Discussed in paragraph 29, *supra*.

35.     We noted that on October 29, 2004, MRP billed one hour for non-working travel time

| 10/29/04 | MRP | 1.00 | 180.00 | .........; travel to Depository Trust Company to have documents signed by J. Massey (1.0). |
|---|---|---|---|---|

Local Rule 2016-2(d)(viii) states that "[t]ravel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates." We asked Paul Hastings to explain why an exception should be made in this instance. Paul Hastings responded as follows:

> Paul Hastings accepts the fee examiner's comment and will delete 1.0 hour and reduce its fee application request by a total of $180.00 in fees. It has been Paul Hastings' practice since the beginning of this bankruptcy proceeding not to bill for <u>any</u> travel time except to the extent work related to the Debtor's bankruptcy matter was performed during the travel time and billed accordingly.

We appreciate Paul Hastings' response and recommend a reduction of $180.00 in fees.

36.     We noted several instances in which there was a discrepancy between the amount of time billed and the actual amount of time listed in the time entries. The time entries are provided below. We asked Paul Hastings to review its records and advise whether adjustments in fees should be made in these instances. Paul Hastings' response to each time entry is provided in italics, below that particular entry .

a.     On September 29, 2004, MLZ had a time entry listed as 1.00 hours for a total fee of $575.00. The sub-parts total 0.70 hours for a difference of $172.50 in fees.

| 09/29/04 | MLZ | 1.00 | 575.00 | Review email on agenda for SEC call and Form S-8 and 11-K compliance issues (.30); telephone conference with J. Reding (.4) |
|---|---|---|---|---|

> *Response: Paul Hastings agrees that a discrepancy has occurred with respect to this entry and will reduce its fee application request by $172.50 in fees.*

b.     On September 22, 2004, EH had a time entry listed as 8.10 hours for a total fee of $3,118.50. The sub-parts total 8.00 hours for a difference of $38.50 in fees.

| 09/22/04 | EH | 8.10 | 3,118.50 | Review and analyze documents (5.0); email correspondence regarding review and production issues (.3); extended telephone conference with M. Taylor regarding S. Brazones' deposition and preparation for future depositions (.5); review, analyze, and revise same (2.0); telephone conference with N. Franklin regarding discovery production issues (.2) |

*Response:  Paul Hastings agrees that a discrepancy has occurred with respect to this entry and will reduce its fee application request by $38.50 in fees.*

c.      On September 23, 2004, CWR had a time entry listed as 5.00 hours for a total fee of $925.00. The sub-parts total 4.00 hours for a difference of $185.00 in fees.

| 09/23/04 | CWR | 5.00 | 925.00 | Conduct searches across DolphinSearch for e-mail production (1.0); organize electronic data files (1.0); create electronic files regarding SEC deponents and FBI interviewees; update interview chart (.5); conduct Concordance and DolphinSearch database searches for exhibits used at depositions (1.0); revise and update index to document production to SEC (.5) |

*Response:  Paul Hastings agrees that a discrepancy has occurred with respect to this entry and will reduce its fee application request by $185.00 in fees.*

d.      On September 30, 2004, PCW had a time entry listed as 9.00 hours for a total fee of $1,935.00.  The sub-parts total 3.6 hours for a difference of $774.00 in fees.

| 09/30/04 | PCW | 9.00 | 1,935.00 | Research issues related to classification of real property under Montana law (3); research issues related to procedures for filing appeal of plan confirmation order, motion to stay confirmation pending appeal, and doctrine of equitable mootness (.6) |

*Response:  Upon review of its timesheets, Paul Hastings has determined that the 9.0 hours and the $1,935.00 in fees is accurate.  Due to a clerical error, the correct time billed was 3.0 hours and 6.0 hours (not 0.6 hours) for a total of 9.0 hours.*

e.      On September 16, 2004 CWR had a time entry listed as 6.50 hours for a total fee of $1,202.50.  The sub-parts total 5.50 hours for a difference of $185.00 in fees.

| 09/16/04 | CWR | 6.50 | $1,202.50 | Prepare e-mails referenced in internal chronology for attorney review (.5); conduct Concordance database searches and scan e-mails to pdf (3.0); revise internal chronology (1.0); continued searches across Concordance databases for documents requested by SEC (.5); review documents; organize hard copy files (.5) |

*Response: Paul Hastings agrees that a discrepancy has occurred with respect to this entry and will reduce its fee application request by $185.00 in fees.*

We accept Paul Hastings' responses and recommend a reduction of $581.00 in fees.

37.    We notes two time entries dealing with conflicts issues.

| 10/07/04 | Marguerite R. Kahn | .50 | 610.00 | | . . . review concerning trustee conflict issues (.5) |
| 10/08/04 | Marguerite R. Kahn | 1.0 | 610.00 | 610.00 | . . . preparation of e-mail concerning trustee conflict issues (1.0) |

U.S. Bankruptcy Code §330 (4)(A)(ii)(I) provides that "(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for – . . .(ii) services that were not – (I) reasonably likely to benefit the debtor's estate; . . ." The Fee Auditor's concern lies in the distinction between the compensability of activities that are necessary to comply with a lawyer's ethical responsibilities and the efforts that are necessary to comply with the disclosure requirements of Fed.R.Bankr.P.2014(a).

*See* In re *Sterling Chemicals Holdings, Inc.*, 293 B.R. 701 (Bankr. S.D.Tex. 2003)(Court ruled 2014(a) compliance efforts to be compensable). We asked Paul Hastings to explain whether the time entries quoted above represent time spent complying with the firm's ethical responsibilities or time spent with regard to the disclosure requirements of Fed.R.Bankr.P.2014(a). Paul Hastings responded as follows:

The entry refers to review and research relating to possible conflicts of interest on the part of the trustee for the senior secured notes, the trustee for the South Dakota

mortgage bonds and the trustee for the Montana mortgage bonds in the event that, concurrently with the issuance of the senior secured notes (and the appointment of the trustee for the senior secured notes), the same institution that is the trustee for the senior secured notes were to become the trustee for the South Dakota mortgage bonds and the trustee for the Montana mortgage bonds. The entry does not refer to a conflict of interest on the part of Paul Hastings.

We appreciate Paul Hastings' response and have no objection to these fees.

38. We noted certain meal expenses which appear excessive and warrant additional information.

| 9/14/04 | J. Austin (3) | $233.85 |
| 8/21/04 | C. Chayavadhanangkur (2) | $88.97 |
| 8/23/04 | C. Chayavadhanangkur(3) | $115.56 |
| 8/23/04 | K. Denniston (7) | $343.44 |
| 8/24/04 | P. Wolf (6) | $220.00 |
| 10/25/04 | J. Austin (2) | $180.33 |
| 10/6/04 | J. Austin (7) | $95.35 |
| 10/06/04 | J. Austin (7) | $617.79 |
| 10/7/04 | K. Denniston (2) | $109.46 |
| 10/15/04 | K. Denniston (2) | $51.89 |
| 10/30/04 | K. Denniston (5) | $141.71 |
| 10/31/04 | K. Denniston(4) | $169.69 |

We recommend reasonable ceilings of $15.00, $25.00 and $50.00 for breakfast, lunch and dinner, respectively. We asked Paul Hastings to explain which meal/s of the day the expense included. Paul Hastings response and accompanying chart are provided below.

| | Timekeeper | Type | Actual Charge | Total if recommended Ceiling Applied |
|---|---|---|---|---|
| 9/14/04 | J. Austin (3) | Dinner | $233.85 | $150.00 |
| 8/21/04 | C. Chayavadhanangkur (2) | Dinner | $88.97 | $100.00 |
| 8/23/04 | C.Chayavadhanangkur(3) | Dinner | $115.56 | $150.00 |
| 8/23/04 | K. Denniston (7) | Dinner | $343.44 | $350.00 |
| 8/24/04 | P. Wolf (6) | Dinner | $220.00 | $300.00 |

| | | | | |
|---|---|---|---|---|
| 10/25/04 | J. Austin (2) | Dinner | $180.33 | $100.00 |
| 10/6/04 | J. Austin (7) | Lunch | $95.35 | $150.00 |
| 10/06/04 | J. Austin (7) | Dinner | $617.79 | $350.00 |
| 10/7/04 | K. Denniston (2) | Dinner | $109.46 | $100.00 |
| 10/15/04 | K. Denniston (2) | Lunch | $51.89 | $50.00 |
| 10/30/04 | K. Denniston (5) | Lunch | $141.71 | $125.00 |
| 10/31/04 | K. Denniston(4) | Dinner | $169.69 | $200.00 |
| | Total | | $2,368.04 | $2,125.00 |

The table above indicates the meal applicable to the charges reflected and includes a column indicating the acceptable charge for the number of meals in question. Paul Hastings will reduce its request by $243.04 representing the difference in the charges actually incurred over the recommended ceiling.

We appreciate Paul Hastings' response and recommend a reduction of $234.04 in expenses.

39.    We noted the following hotel charges which may be excessive.

| | | |
|---|---|---|
| 9/14 - 9/15/04 | J. Austin (1 night - Philadelphia) | $272.47 |
| 9/23 - 9/24/04 | J. Austin (1 night New York) | $396.51 |
| 8/29 - 8/30/04 | K. Denniston (1 night - Delaware) | $605.00 |
| 9/14/04 | K. Denniston (1 night - Delaware) | $265.90 |
| 10/25-10/29/04 | J. Austin     (4 nights - New York) | $1,657.98 |
| 10/4-10/7/04 | J. Austin (3 nights - Phoenix | $806.77 |
| 10/25/04 | K. Denniston (7 nights - New York) | $3,077.12 |
| 10/29/04 | C. Chayavadhanangkur (4 nights - New York) | $1,530.56 |
| 10/29/04 | D. Nealy (4 nights New York) | $1,530.56 |
| 10/25-11/1/04 | K. Leach (7 nights - New York) | $3,120.56 |
| 10/12-10/13/04 | J. Austin (1 night New York) | $555.86 |
| 10/25 - 10/29/04 | A. Elliott (3 nights - New York) | $1,608.55 |
| 10/25 - 10/28/04 | M. Schwartz (3 nights - New York) | $1,576.04 |

The Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper include the following: Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." For New York and San Francisco, we recommend a reasonable ceiling of $350.00 per night for hotel stays. For all other cities in the continental U.S., we recommend a ceiling of $250.00 per night. For the above referenced lodging expenses, we asked Paul Hastings to provide the name of the hotel, the nightly

rate and any additional charges which may have contributed to the expense. Paul Hastings' response and accompanying chart is provided below.

| | Timekeeper | Name of Hotel | Actual Charges | Total if Recommended Ceiling Applied | Reason for Travel |
|---|---|---|---|---|---|
| 9/14 - 9/15/04 | J. Austin (1 night – Delaware) | Dupont | $272.47 | $250.00 | 9/15/04 Omnibus Hearing |
| 9/23 - 9/24/04 | J. Austin (1 night New York) | Swisshotel | $396.51 | $350.00 | Effective Date Planning |
| 8/29 - 8/30/04 | K. Denniston (1 night - Delaware) | Dupont | $605.00 | $250.00 | 2004 hearing and meeting with client (used suite in lieu of room and additional conference room because of better rates) |
| 9/14/04 | K. Denniston (1 night – Delaware | Dupont | $265.90 | $250.00 | 9/15/04 Omnibus Hearing |
| 10/25-10/29/04 | J. Austin (4 nights - New York) | Swisshotel | $1,657.98 | $1,400.00 | Effective Date Closing |
| 10/4-10/7/04 | J. Austin (3 nights – Phoenix | Ritz Carlton | $806.77 | $750.00 | Confirmation Hearing |
| 10/25/04 | K. Denniston (7 nights - New York) | Swisshotel | $3,077.12 | $2,450.00 | Effective Date Closing |
| 10/29/04 | C. Chayavadhanangkur (4 nights - New York) | Swisshotel | $1,530.56 | $1,400.00 | Effective Date Closing |
| 10/29/04 | D. Nealy (4 nights New York) | Swisshotel | $1,530.56 | $1,400.00 | Effective Date Closing |
| 10/25-11/1/04 | K. Leach (7 nights - New York) | Swisshotel | $3,120.56 | $2,450.00 | Effective Date Closing |
| 10/12-10/13/04 | J. Austin (1 night New York) | Swisshotel | $555.86 | $350.00 | Bank syndication meeting for exit financing |
| 10/25 - 10/29/04 | A. Elliott (3 nights - New York) | Swisshotel | $1,608.55 | $1,050.00 | Effective Date Closing |
| 10/25 - 10/28/04 | M. Schwartz (3 nights - New York) | Swisshotel | $1,576.04 | $1,050.00 | Effective Date Closing |
| | Total | | $15,473.31 | $13,400.00 | |

The table above identifies not only the lodging charges incurred by timekeeper, but also a description of the matter requiring the travel in question. Paul Hastings attempts to comply with these suggested guidelines. Paul Hastings will reduce its

request by $2,073.31 to reflect the difference between the actual charges incurred and the total amount if the recommended ceilings are used.

We appreciate Paul Hastings response and recommend a reduction of $2,073.31 in expenses.

40.     We noted that Paul Hastings seeks reimbursement totaling $6,109.68 for "Taxi/Ground Transportation" and reimbursement totaling $31,789.44 for "Airfare". We asked Paul Hastings to provide a breakdown of these charges including the origin and destination points for each trip, the mode of transportation (rail/taxi/car service) utilized, the class airfare purchased, the reason for the travel and the professional traveling. Paul Hasting's response is provided below and the accompanying charts are provided in Response Exhibits 10 and 11[11], attached hereto.

> Attached as Paul Hastings Supplement 4 is a chart providing the detail requested as to each charge. The chart reflects a number of charges for local ground transportation services (i.e. travel from office to home). While the services were incurred to accommodate late-hour travel and security issues, Paul Hastings will reduce its request by these amounts to address the fee examiner's concerns on this matter. In addition, despite diligent inquiry, Paul Hastings was unable to provide the detailed information requested with respect to a number of items listed on the chart. Accordingly, Paul Hastings will reduce its request by these amounts to the extent the detailed information requested by the fee examiner was not available. As reflected in the column labeled "Voluntary Reduction", Paul Hastings will reduce its request by an aggregate of $2,363.15. The remaining charges shown on the chart reflect ground transportation directly related to travel necessitated by the Debtor's bankruptcy proceeding. All charges for car service reflect a negotiated contract rate that is less than what would be charged for normal taxi service.

> With respect to the inquiry on airfare, attached as Paul Hastings Supplement 5 are portions of exhibits relating to airfare filed with the Debtor's Twelfth and Thirteenth Monthly Fee Applications which provide the detail requested by the fee examiner. It is Paul Hastings' policy to book the lowest priced airline tickets that are fully changeable and fully refundable. This policy is to ensure that airline reservations can be changed (with or without significant advance notice) to accommodate changes in the court's schedule and changes necessitated by the client as well as opposing counsel. The fares for fully changeable and fully refundable airline tickets fluctuate

---

[11]Referred to by Paul Hastings as Supplements 4 and 5.

daily and would not represent the lowest fare available for a particular desired travel schedule that did not provide this flexibility (for example, internet only or severely discounted airline reservations that are nonrefundable, nontransferable and require a penalty payment for itinerary changes).

We appreciate Paul Hastings' response and recommend a reduction of $2,363.15 for the ground transportation expenses.

41.    Thus, for the Fifth Application Period, we recommend fees totaling $3,240,452.00 ($3,262,821.00 minus $22,369.00) and expenses totaling $306,816.93 ($311,496.43 minus $4,679.50) for Paul Hastings' services from September 1, 2004, through November 1, 2004.

## PRIOR INTERIM APPLICATIONS

42.    We previously filed the following final reports for Paul Hastings' prior interim applications beginning on September 14, 2003, which we incorporate by reference herein.

### First Interim Period

43.    In the Fee Auditor's Final Report Regarding Fee Application of Paul Hastings for the First Interim Period (Docket #1858), filed on August 6, 2004, we recommended approval of fees totaling $2,858,300.95 ($2,868,362.25 minus $10,061.30) and expenses totaling $119,714.47 ($124,097.31 minus $4,382.84), for Paul Hastings' services from September 14, 2003 through November 30, 2003.  These recommendations were adopted by the Court in the Order Approving Reductions Proposed by Fee examiner in Connection with First Quarterly Interim Fee Applications of Professionals, dated September 15, 2004 (Docket #2084).

### Second Interim Period

44.    In the Fee Auditor's Final Report Regarding Fee Application of Paul Hastings for the Second Interim Period (Docket 2212), filed on October 14, 2004, we recommended approval of fees

totaling $2,211,342.00 ($2,212,332.00 minus $990.00) and expenses totaling $129,358.84 ($133,958.57 minus $4,599.73), for Paul Hastings' services from December 1, 2003 through February 29, 2004.  These recommendations were adopted by the Court in the Omnibus Order Approving Second Quarterly Interim Fee Applications of Professionals, dated December 6, 2004 (Docket #2462).

45.    We have reviewed each of these previous final reports, and we do not believe there is any reason to change any of the recommendations in any of the reports.

## CONCLUSION

46.    Thus we recommend approval of fees in the amount of $13,504,176.95 ($13,620,661.75 minus $116,484.80) and expenses in the amount of $891,087.33 ($916,531.68 minus 25,444.35) for Paul Hastings' services from September 14, 2003, through November 1, 2004.


Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050


Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served, without exhibits, via First Class United States mail to the attached service list on this 25th day of January, 2005.  Copies of the exhibits may be obtained in electronic format by contacting the undersigned.

_____
Warren H. Smith

# SERVICE LIST

<u>Notice Parties</u>

**The Applicant**
Carolyn Chayavadhanangkur
Karol K. Denniston
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
600 Peachtree Street, Suite 2400
Atlanta, GA 30308

**The United States Trustee**
Mark Kenney, Esq.
Office of the United States Trustee
844 King Street, Room 2313
Wilmington, DE 19801

**The Debtor**
William M. Austin, Esq.
NorthWestern Corporation
125 South Dakota Avenue, Ste. 11
Sioux Falls, S. Dakota 57104

**Co-Counsel to the Debtors**
Jesse H. Austin, Esq.
Karol Denniston, Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Road, N.E.
Atlanta, GA 30308

Victoria Watson Counihan
William E. Chipman, Jr.
Greenberg Traurig, LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

**Co-Counsel to the Unsecured Creditor Committee**
Neil B. Glassman, Esq.
Charlene D. Davis, Esq.
The Bayard Firm
222 Delaware Avenue
Wilmington, DE 19801

Alan Kornberg
Talia Gill
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019

## Exhibit A

| | | |
|---|---|---|
| 6/20-6/23/04 | J. Austin (2) | $121.02 |
| 5/17/04 | K. Denniston (7) | $280.26 |
| 6/10/04 | K. Denniston (4) | $166.28 |
| *5/25/04* | *K. Denniston (4)* | *$186.11\** |
| *5/26/04* | *K. Denniston (4)* | *$164.74\** |
| 5/26/04 | K. Denniston (4) | $112.59 |
| 5/4/04 | J. Redding (5) | $236.00 |
| *5/25/04* | *K. Denniston (4)* | *$186.11\** |
| *5/26/04* | *K. Denniston (4)* | *$164.74\** |
| 8/5/04 | J. Austin (4) | $231.11 |
| 8/6/04 | J. Austin (4) | $231.11 |
| 8/18/04 | J. Austin (4) | $222.81 |
| 8/23/04 | J. Austin (7) | $620.44 |
| 7/26/04 | K. Denniston (7) | $632.26 |
| 7/27/04 | K. Denniston (2) | $73.21 |
| 7/30/04 | K. Denniston (2) | $73.00 |
| 7/30/04 | K. Denniston (2) | $81.11 |
| 7/27/04 | J. Kleiman (3) | $92.84 |
| 7/28/04 | T. Pollock (5) | $217.76 |
| 7/13-7/15/04 | J. Austin (3) | $239.50 |
| 7/13-7/15/04 | J. Austin (3) | $181.90 |
| 6/20/04 | K. Denniston (3) | $187.95 |
| 6/24/04 | K. Shryock (1) | $106.21 |
| 7/19-7/21/04 | J. Austin (4) | $297.18 |
| 5/1/04 | K. Denniston (1) | $50.00 |
| 7/22/04 | M. Kelley (3) (Includes $5.00 Meal Tip) | 101.93 |
| 7/21/04 | J. Kleiman (2) | $97.00 |
| 7/22/04 | J. Kleiman (2) | $90.00 |
| 7/9-7/11/04 | J. Austin (2) | $105.86 |
| 6/22/04 | J. Austin (2) | $93.40 |
| 6/22/04 | J. Austin (2) | $97.79 |

*These entries were found duplicated in the categories "QF's-YELP" and "Securities Class Action".

<u>Exhibit B</u>

a.    On September 9, 2004 five professionals prepared for and attended the same meeting for a total of 6.10 hours and $1,830.50 in fees.

| | | | | | |
|---|---|---|---|---|---|
| 09/09/04 | KKD | 1.9 | 425.00 | 807.50 | Prepare for (.7) and conduct team meeting to prepare for September omnibus hearing and continued confirmation hearing (1.2) |
| 09/09/04 | DLN2 | 0.80 | 145.00 | 116.00 | Team meeting regarding 9-15-04 hearing |
| 09/09/04 | CCC5 | 1.30 | 234.00 | 305.50 | Prepare for and attend status meeting regarding effective date planning, assumption of contracts, and preparation for continued confirmation hearing |
| 09/09/04 | MBK3 | 1.10 | 215.00 | 236.50 | Prepare for (.10) and attend team meeting (1.0) |
| 09/09/04 | SFW | 1.00 | 365.00 | 365.00 | Status meeting |

b.    On 9/20/04 five professionals billed 6.00 hours for a total fee of $2,017.00 attending the same conference call.

| | | | | | |
|---|---|---|---|---|---|
| 09/20/04 | JHA | 1.00 | 590.00 | $590.00 | . . . weekly conference call with senior management to discuss confirmation issues(1.00) |
| 09/20/04 | KKD | 1.20 | 425.00 | $510.00 | Prepare for and conduct team meeting regarding continued confirmation hearing, confirmation order, brief and evidence to be presented |
| 09/20/04 | KKL | 1.00 | 315.00 | $315.00 | conference regarding exit activities and confirmation issues (1.0) |
| 09/20/04 | MBK | 1.50 | 215.00 | $322.50 | Attend NOR team meeting regarding confirmation meeting |
| 09/20/04 | PCW | 1.30 | 215.00 | $279.50 | . . .NOR team meeting to discuss deliverables for confirmation hearing (1.3) . . . |

c.    On November 1, 2004, nine (9) firm members attended a closing.  The total time spent including any preparation time was 103.80 hours[12] for a total fee of $32,945.00.

| | | | | |
|---|---|---|---|---|
| 10/21/04 | KMW | 3.50 | 665.00 | Prepare for closing |
| 10/26/04 | KMW | 6.50 | 1235.00 | Prepare for closing |

_____

[12] Time for this entry was located in three (3) Project Categories - (i) Financing-Exit Loan, (ii) New Loan and (iii) Senior Notes.

| | | | | |
|---|---|---|---|---|
| 10/27/04 | KMW | 9.50 | 1805.00 | Prepare for closing |
| 10/28/04 | KMW | 13.00 | 2470.00 | Prepare for closing |
| 10/29/04 | KMW | 10.00 | 1900.00 | Prepare for closing |
| 10/30/04 | KMW | 8.00 | 1520.00 | Prepare for closing |
| 11/01/04 | ARD | 10.30 | 3811.00 | Attend closing conference (3.0);......... |
| 11/01/04 | JHA | 11.00 | 6490.00 | .........; attend closing of exit financing (6.2);........... |
| 11/01/04 | KMW | 9.00 | 1710.00 | Assist with closing |
| 11/01/04 | MRK | 6.00 | 3660.00 | Attend closing |
| 11/01/04 | OS | 5.00 | 2125.00 | Attend closing of transaction |
| 11/01/04 | SCK | 3.00 | 1355.00 | Participate in closing conference call |
| 10/31/04 | KC | 4.80 | 2304.00 | .........; participate in conference call to confirm readiness for closing (1.0);........... |
| 11/01/04 | KC | 4.80 | 2304.00 | Participate in NOR closing via telephone (3.0);........... |
| 10/31/04 | SRS | 5.10 | 2397.00 | Attend pre-closing at PHJW (2.1);........... |
| 11/01/04 | JCT | 9.00 | 4005.00 | Attend closing for exit financing |
| 11/01/04 | SRS | 7.80 | 3666.00 | Attend closing (6.0);........... |

d.     On October 27, 2004, four (4) firm members attended a meeting. The total time spent including any preparation time was 6.50 hours for a total fee of $3,232.50.

| | | | | |
|---|---|---|---|---|
| 10/27/04 | JCT | 2.00 | 890.00 | Prepare for and participate in audit committee meeting relating to quarterly report on form 10-Q |
| 10/27/04 | JHA | 1.00 | 590.00 | Participate in audit committee review of draft September 30, 2004 10Q |
| 10/27/04 | MLZ | 1.50 | 862.50 | Prepare for and participate with J. Tyras in audit committee and disclosure committee Form 10-Q review |
| 10/27/04 | SCK | 4.00 | 1780.00 | .........; participate in audit committee call regarding Form 10-Q (2.0). |

## Exhibit C

| 09/01/04 | Kline 1.50 | 445.00 667.50 | Review summary section from the revised Offering Circular for the senior secured notes |
| 09/02/04 | Austin 1.00 | 590.00 590.00 | Anaylze and revise offering memorandum on senior notes |
| 09/02/04 | Iredal .60 | 560.00 336.00 | . . . begin review of offering circular (.6) |
| 09/02/04 | Pollock 2.00 | 645.00 1,290.00 | Participate in conferences with P. Evans, J. Tyras regarding description of notes and status of offering (1.5); review offering memorandum and correspondence from J. Tyras (0.5) |
| 09/02/04 | Ritchie .50 | 395.00 197.50 | . . . Review draft of offering circular (.5). . . |
| 09/02/04 | Tyras 13.50 | 445.00 6,007.50 | Revise offering memorandum (13.0) and confer with working group regarding same (.5) |
| 09/02/04 | Tyras 1.50 | 385.00 577.50 | Review and provide comments on note memorandum |
| 09/03/04 | Patrizia 2.20 | 565.00 1,243.00 | Review revised draft of offering circular and note comments on same; telephone conference with J. Tyras regarding comments |
| 09/03/04 | Iredale .20 | 560.00 112.00 | . . . review email from J. Tyras regarding changes to offering circular and timeline for finalizing same (.2) |
| 09/03/04 | Tyras 5.50 | 445.00 2,447.50 | Revise offering memorandum |
| 09/03/04 | Hong 1.00 | 385.00 385.00 | Review and provide comments on note offering circular |
| 09/06/04 | Austin 4.00 | 590.00 1,062.00 | Analyze and revise offering memorandum |
| 09/06/04 | Tyras 1.50 | 445.00 667.50 | Review comments to offering circular from Dewey Ballentine team in preparation for drafting session |
| 09/07/04 | Austin 1.80 | 590.00 1,062.00 | Analyze and revise modified offering memorandum (1.0); conference call with J. Tyras and S. Saks on issues regarding senior notes offering (.80) |
| 09/07/04 | Pollock 4.00 | 645.00 2,580.00 | Prepare for and participate in all-hands drafting session on offering memorandum |
| 09/07/04 | Ritchie 0.30 | 395.00 118.50 | Conference with N. Iredale regarding draft offering circular |
| 09/07/04 | Tyras 8.50 | 445.00 3,782.50 | Attend drafting session for offering memorandum with working group (4.0); revise offering memorandum (4.5) |
| 09/07/04 | Saks 4.60 | 470.00 2,162.00 | . . . Prepare for and attend drafting session regarding offering circular (4.1); . . . review and comment on offering circular (.5). . . |
| 09/08/04 | Pollock 2.20 | 645.00 1,419.00 | Prepare for and participate in second call with P. Evans, M. Young, Pul Hastings team to review |

| Date | Name | Hours | Rate | Amount | Description |
|------|------|-------|------|--------|-------------|
| | | | | | status of documentation for offering (1.2); review precedent offering material sent by J. Tyras (1.0) |
| 09/08/04 | Ritchie | 0.40 | 395.00 | 185.00 | Review emails from N. Iredale and J. Tyras regarding offering circular (.2); conference with N. Iredale regarding same (.2) |
| 09/08/04 | Tyras | 8.50 | 445.00 | 3,782.50 | Numerous telephone conferences with working group regarding offering memorandum (.5); revise same (8.0) |
| 09/08/04 | Sachs | 1.30 | 470.00 | 611.00 | Review and comment on offering circular (1.0); review description of note precedents (.3) |
| 09/09/04 | Tyras | 3.00 | 445.00 | 1,335.00 | Revise offering memorandum |
| 09/09/04 | Saks | 1.10 | 470.00 | 517.00 | . . . Review and comment on offering circular (1.1) . . . |
| 09/10/04 | Pollock | 1.70 | 645.00 | 1,096.50 | Participate in all-hands conference regarding status of bank and bond offerings and time and responsibility (1.1). . . and M. Nieman on comments to offering memorandum (0.6) . . . |
| 09/12/04 | Patrizia | 0.80 | 565.00 | 452.00 | Review offering circular draft |
| 09/13/04 | Conboy | .50 | 480.00 | 240.00 | Review offering memorandum for senior notes (.50); . . . |
| 09/13/04 | Ritchie | 1.20 | 395.00 | 474.00 | Review offering circular regarding exit financing and tax issues |
| 09/13/04 | Tyras | 10.50 | 445.00 | 4,672.50 | Revise offering memorandum |
| 09/14/04 | Austin | 3.00 | 590.00 | 1,770.00 | Review and revise most recent draft of offering memorandum |
| 09/14/04 | Conboy | .30 | 480.00 | 144.00 | Review latest version of offering memoranda (.30) . . . |
| 09/14/04 | Pollock. | 40 | 645.00 | 258.00 | . . . review Nieman comments to offering memorandum to reflect $25 million revolver and $125 million term loan (0.4) |
| 09/14/04 | Ritchie | 0.50 | 395.00 | 197.50 | Review offering circular regarding exit financing and tax issues |
| 09/14/04 | Tyras | 12.00 | 445.00 | 5,340.00 | Revise offering memorandum |
| 09/14/04 | Saks | .50 | 470.00 | 235.00 | . . . review description of note precedents (.5); . . . |
| 09/15/04 | Patrizia | .80 | 565.00 | 452.00 | Review draft offering circular |
| 09/15/04 | Austin | 1.50 | 590.00 | 885.00 | Revise recent draft of offering memorandum |
| 09/15/04 | Iredale | .10 | 560.00 | 56.00 | . . . review email from J. Tyras regarding offering circular (.1) |
| 09/15/04 | Pollock | 2.10 | 645.00 | 1,354.50 | . . . review correspondence from J. Tyras with revised offering memorandum (1.2); participate in conferences with S. Saks on inclusion of 10K disclosure in offering memorandum (0.5) and review correspondence relating to same (0.4) |
| 09/15/04 | Ritchie | 1.70 | 395.00 | 671.50 | . . . review revised offering circular (1.5); emails to/from N. Iredale regarding same (.2). . . |

| Date | Name | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 09/15/04 | Tyras | 4.00 | 445.00 | 1,780.00 | Revise offering memorandum (3.8); confer with working group regarding same (.2) |
| 09/15/04 | Saks | .40 | 470.00 | 188.00 | . . . telephone calls with Dewey Ballentine and NorthWestern regarding incorporation by reference requirements in offering circular (.2); review and comment on offering circular (.2); . . . |
| 09/16/04 | Patrizia | .50 | 565.00 | 282.50 | Prepare comments on draft offering circular |
| 09/16/04 | Austin | 2.50 | 590.00 | 1,298.00 | Revise offering memorandum |
| 0916/04 | Iredale | 1.70 | 560.00 | 952.00 | . . . Review revised offering circular (1.7) |
| 09/16/04 | Pollock | 1.00 | 645.00 | 645.00 | Telephone conference with P. O'brien regarding disclosure in offering memorandum (0.3); participate in conference with S. Saks regarding same (0.3) telephone conference with S. Saks and E. Jacobsen to discuss disclosure in offering memorandum (.4) . . . |
| 09/16/04 | Ritchie | 1.60 | 395.00 | 632.00 | . . . review revised offering circular (1.2); review comments from N. Iredale (.2); email proposed comments to J. Apadula (.2) |
| 09/16/04 | McGovern | 4.0 | 305.00 | 1,220.00 | . . . Prepare offering memorandum (4.) |
| 09/17/04 | Austin | 1.50 | 590.00 | 885.00 | Revise offering memorandum (1.3); discuss certain issues with J. Tyras (.20) |
| 09/17/04 | Iredale | .20 | 560.00 | 112.00 | . . . review revised offering circular (.2) |
| 09/17/04 | Ritchie | 3.00 | 395.00 | 1,185.00 | Review proposed changes from Dewey Ballentine (.4); telephone conference with J. Apadula regarding changes to tax language of offering circular (.9); review IRS regulations regarding same (.7); draft changes to offering circular (.8); conference with N. Iredale regarding same (.2) |
| 09/17/04 | McGovern | 2.00 | 305.00 | 610.00 | Prepare offering memorandum |
| 09/18/04 | McGovern | 4.60 | 305.00 | 1,403.00 | Prepare offering memorandum |
| 09/20/04 | Pollock | 1.0 | 645.00 | 645.00 | Participate in conference with P. Evans, H. Young, J. Austin, M. Schwartz, T. Knapp to review status of offering circular and description of notes (1.0) |
| 9/21/04 | McGovern | 14.50 | 305.00 | 4,422.50 | Prepare offering memorandum (13.5); meeting with T. Pollock and S. Saks regarding offering memorandum (.5); correspondence with T. Pollock and S. Saks regarding offering memorandum (.5) |
| 09/22/04 | Tyras | 12.50 | 445.00 | 5,562.50 | Revise and distribute offering memorandum |
| 09/22/04 | McGovern | 2.00 | 305.00 | 610.00 | Prepare offering memorandum |
| 09/23/04 | Patrizia | 1.40 | 565.00 | 791.00 | Review revised draft of offering circular |
| 09/23/04 | Irving | .50 | 610.00 | 305.00 | Several conferences with M. Kahn regarding offering circular (.5) . . . |
| 09/23/04 | Conboy | .20 | 480.00 | 96.00 | . . . review revised offering circular (.20) . . . |

| 09/23/04 | Ritchie | .70 | 395.00 | 276.50 | Review draft offering circular and redline received from J. Tyras (.5) |
|---|---|---|---|---|---|
| 09/23/04 | Saks | 2.00 | 470.00 | 940.00 | . . . review and comment on offering circular (2.0). . . |
| 09/23/04 | McGovern | .80 | 305.00 | 244.00 | Prepare offering memorandum |
| 09/24/04 | Patrizia | 1.30 | 565.00 | 734.50 | Complete review of revised draft offering circular (1.2) forward comments regarding same to J. Tyras (.1) |
| 09/24/04 | Pollock | 2.60 | 645.00 | 1,677.00 | Participate in NOR, CSFB and Lehman drafting session (2.0); conference with S. Saks about next steps in moving offering forward (0.3); correspondence with J. Austin regarding same (0.3) |
| 09/24/04 | Ritchie | 3.80 | 395.00 | 1,501.00 | Review email comments to offering circular from J. Apadula and J. Pietras of Dewe Ballentine (.5); review draft offering circular and redine received from J. Tyras (1.5); review comments previously submitted to J. Tyras (.5); prepare comments to draft offering circular (1.0); emails to J. Tyras and J. Apadula (.3) |
| 09/24/04 | Tyras | 3.50 | 445.00 | 1,557.50 | Attend drafting session for notes offering |
| 09/24/04 | Tyras | 4.00 | 445.00 | 1,780.00 | Revise offering memorandum (3.5); confer with working group regarding same (.5) |
| 09/24/04 | Saks | 3.50 | 470.00 | 1,645.00 | . . . prepare for and attend drafting session on offering circular (2.5); review and comment on offering circular (1.0) |
| 09/24/04 | McGovern | 2.5 | 305.00 | 762.50 | Attend drafting session for offering memorandum |
| 09/26/04 | Austin | 1.00 | 590.00 | 590.00 | Revise offering memorandum and description of notes |
| 09/27/04 | Saks | 3.00 | 470.00 | 1,410.00 | . . . review and comment of offering circular (3.0) |
| 09/28/04 | Saks | 1.00 | 470.00 | 470.00 | . . . review and comment on offering circular |
| 09/29/04 | Tyras | .50 | 445.00 | 222.50 | Telephone conference with P. O'Brien regarding offering memorandum |
| 09/29/04 | Saks | 2.00 | 470.00 | 940.00 | . . . Review and comment on offering circular (2.0) |
| 09/29/04 | McGovern | 4.50 | 305.00 | 1,372.50 | Prepare analysis of precedent offerings (4.0); correspondence with S. Saks and J. Tyras regarding same (.5) |
| 09/30/04 | Tyras | 7.00 | 445.00 | 3,115.00 | Revise offering memorandum |
| 09/30/04 | Saks | 3.00 | 470.00 | 1,410.00 | . . . review and comment on offering circular (3.0) |
| 10/07/04 | JCT | 8.00 | 445.00 | 3560.00 | Attend drafting session for offering memorandum and description of notes |

| Date | Initials | Hours | Rate | Amount | Description |
|------|----------|-------|------|--------|-------------|
| 10/07/04 | SRS | 8.20 | 470.00 | 3,854.00 | ...........; prepare for and attend drafting session regarding preliminary offering circular and description of notes (8.2);.......... |
| 10/07/04 | TPM | 2.00 | 305.00 | 610.00 | Attend drafting session (2.0);........... |
| 10/13/04 | JCT | 17.50 | 445.00 | 7787.50 | Attend negotiation session for description of notes and offering circular at financial printer. |
| 10/13/04 | MRK | 16.00 | 610.00 | 9760.00 | Review, comments and negotiation concerning offering memorandum |
| 10/13/04 | SRS | 17.00 | 470.00 | 7,990.00 | ...........; attend drafting session at printer to review, comment on and finalize preliminary prospectus (17.0);........ |
| 10/13/04 | TMM | 16.30 | 335.00 | 5460.50 | review offering circular (.3); drafting sessions at printer (16.0). |
| 10/14/04 | JCT | 20.00 | 445.00 | 8900.00 | Attend negotiation session for description of notes and offering circular at financial printer. |
| 10/14/04 | SRS | 11.00 | 470.00 | 5170.00 | ............; attend drafting session at printer to review, comment on and finalize preliminary prospectus (11.0);........ |
| 10/14/04 | TMM | 15.00 | 335.00 | 5025.00 | Attend drafting session at printer (15.0);........ |
| 10/14/04 | TPM | 15.50 | 305.00 | 4727.50 | Prepare offering circular (15.5);.......... |
| 10/25/04 | JCT | 20.00 | 445.00 | 8900.00 | Attend drafting session at financial printer to complete offering circular and purchase agreement |
| 10/25/04 | KLH | 6.30 | 305.00 | 1921.50 | Attend drafting session at the financial printer |
| 10/25/04 | MRK | 14.00 | 619.00 | 7625.00 | Review and revision of notes offering circular (8.0);........; review of revised draft of Credit Agreement (4.5). |
| 10/25/04 | SRS | 7.0 | 470.00 | 3290.00 | ........; review, comment on and finalize final offering circular at printer (7.0). |
| 10/26/04 | JCT | 11.50 | 445.00 | 5117.50 | Attend drafting session at financial printer to complete offering circular and purchase agreement (11.5);............... |
| 10/26/04 | KLH | 3.80 | 305.00 | 1159.00 | Attend drafting session at the financial printer |

| Date | Name | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 10/26/04 | SRS | 4.00 | 470.00 | 1880.00 | ...........; review, comment on and finalize final offering circular at printer (4.0). |
| 10/01/04 | Tyras | 7.50 | 445.00 | 337.50 | Revise and distribute offering circular |
| 10/01/04 | Austin | 0.50 | 590.00 | 295.00 | . . . telephone call with J. Tyras regarding additional revisions to offering memorandum (.50) |
| 10/01/04 | Kahn | 9.50 | 610.00 | 5,795.00 | Preparation of description of Montana Mortgage to be included in offering memorandum for notes (9.5). . . |
| 10/03/04 | Austin | 2.00 | 590.00 | 1,180.00 | Revise offering memorandum |
| 10/03/04 | Kahn | 7.00 | 610.00 | 4,270.00 | Preparation of description of South Dakota mortgage to be included in offering memorandum for notes |
| 10/04/04 | Ritchie | 2.20 | 395.00 | 869.00 | Review revised offering circular (.7); conference with N. Iredale regarding same (.1); review proposed changes from J. Apadula and research same (.7); draft proposed revisions to tax language (.5); conference with N. Iredale regarding same (.2) |
| 10/04/04 | Evans | 1.00 | 535.00 | 535.00 | Review offering memorandum and comment on legend |
| 10/04/04 | Kahn | 5.00 | 610.00 | 3,050.00 | Preparation of descriptions of mortgages for inclusion in offering memorandum for notes (5.0) . . . |
| 10/05/05 | Tyres | 2.00 | 445.00 | 890.00 | Revise offering memorandum |
| 10/05/04 | Hong | 1.50 | 385.00 | 577.50 | Review and revise offering circular |
| 10/05/04 | Pollock | 2.00 | 645.00 | 1,290.00 | Review offering memorandum (2.0) |
| 10/06/05 | Patrizia | 0.50 | 565.00 | 282.50 | Review and comment on revised offering circular |
| 10/06/04 | Ritchie | 1.00 | 395.00 | 395.00 | Review status of offering circular changes (.5); emails to/from J. Tyras regarding status of revisions to description of notes section of the circular (.3); review email from S. Sacks regarding markup of description of notes (.2) |
| 10/06/04 | Tyras | 2.00 | 445.00 | 890.00 | Revise offering memorandum |
| 10/06/04 | Tyras | 2.00 | 445.00 | 890.00 | Prepare legal opinion for senior note offering |
| 10/06/04 | Pollock | 3.20 | 645.00 | 2,064.00 | . . . conference with J. Tyras to discuss offering memorandum (0.4) |
| 10/07/04 | Patrizia | 0.20 | 565.00 | 113.00 | Review offering circular draft and send comments on same to J. Tyras (.2); . . . |
| 10/07/04 | Austin | 2.00 | 590.00 | 1,180.00 | Revise offering memorandum |
| 10/08/04 | Ritchie | 0.20 | 395.00 | 79.00 | Conference with N. Iredale regarding revised offering circular |
| 10/08/04 | Tyras | 9.50 | 445.00 | 4,227.50 | . . . revise offering memorandum (9.5) |
| 10/08/04 | Austin | 2.00 | 590.00 | 1,180.00 | Revise offering memorandum (1.0); conference call with J. Tyras regarding comments (1.) |
| 10/09/04 | Zuppone | 1.30 | 575.00 | 747.50 | Review and revise SEC investigation related disclosure for note offering memorandum |

| Date | Name | Hours | Rate | Amount | Description |
|------|------|-------|------|--------|-------------|
| 10/11/04 | Patrizia | 1.00 | 565.00 | 565.00 | . . . review draft offering circular and send comments to J. Tyras (1.0) |
| 10/11/04 | Ritchie | 3.10 | 395.00 | 1,224.50 | Review revised offering circular (1.0); . . . draft changes to offering circular and email to J. Apadula (1.0); conference with N. Iredale regarding same (.5); . . . telephone conference with S. Vickman and N. Iredale regarding changes to offering circular (.4); conference with N. Iredale regarding same (.2) |
| 10/11/04 | Tyras | 10.00 | 445.00 | 4,450.00 | Revise offering memorandum (10.00) |
| 10/11/04 | Austin | 1.5 | 590.00 | 885.00 | Revise offering memorandum (1.5). . . |
| 10/11/04 | Iredale | 1.70 | 560.00 | 952.00 | Review email from J. Tyras regarding offering circular (.1); . . . review offering circular (1.6) . . . |
| 10/11/04 | Saks | | 3.00 | 470.00  1,410.00 | . . .attend conference call drafting session on preliminary offering circular (3.0). . . |
| 10/11/04 | Pollock | 1.50 | 645.00 | 967.50 | Participate in conference regarding status of offering and description of notes (1.5) |
| 10/12/04 | Ritchie | 3.30 | 395.00 | 1,303.50 | . . . telephone conference with J. Apadula regarding changes to offering circular (1.0) . . . draft changes to offering circular (1.0) . . .prepare email to J. Tyras with changes to offering circular (.4) . . . emails to and from J. Apadula regarding changes to offering circular (.7); email to J. Tyras (.2) |
| 10/12/04 | Tyras | 3.0 | 445.00 | 1,335.00 | revise offering memorandum (3.0) . . . |
| 10/12/04 | Austin | 3.30 | 590.00 | 1,947.00 | Analyze revisions to offering memorandum and description of notes for offering memorandum (3.30); |
| 10/12/04 | Hong | 0.50 | 385.00 | 192.50 | Review offering circular |
| 10/12/04 | Muldoon | 8.80 | 335.00 | 2,948.00 | Review road show presentation and offering circular |
| 10/12/04 | McGovern | 5.00 | 305.00 | 1525.00 | Perform S-K compliance check on offering circular (5.0); . . . |
| 10/13/04 | Danes | 5.50 | 370.00 | 2,035.00 | Prepare description of notes section of offering memorandum (5.0); conferences with M. Kahn regarding same (.4); correspondence with M. Kahn regarding same (.4); correspondence and telephone conferences with J. Tyras and T. McGovern regarding offering memorandum (.5); . . . |
| 10/13/04 | Han | 2.40 | 385.00 | 924.00 | Review, analyze, and revise offering circular regarding litigation disclosures (2.0); . . . |
| 10/13/04 | Austin | 4.00 | 590.00 | 2,360.00 | Analyze revisions to description of notes and mortgages in offering memorandum (3.30); conference call with S. Saks, J.Tyras and M.Kahn |

| Date | Name | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| | | | | | regarding revisions to offering memorandum (.70) . . . |
| 10/13/04 | Hong | 2.00 | 385.00 | 770.00 | Review and comment on offering circular |
| 10/13/04 | McGovern | 14.5 | 305.00 | 4,422.50 | Prepare offering circular (14.5); |
| 10/14/04 | Danes | 7.90 | 370.00 | 2,923.00 | Prepare description of notes section of offering memorandum (5.5); conferences with M. Kahn regarding same (1.4); correspondence and telephone conferences with J. Tyras and T. McGovern regarding offering memorandum (.5); conferences with M. Kahn regarding description of notes (.5); . . . |
| 10/14/04 | Ritchie | 1.00 | 395.00 | 395.00 | Review marked drafts of offering circular and description of notes |
| 10/14/04 | Carter | 0.50 | 525.00 | 262.50 | Review litigation description in offering circular as revised |
| 10/14/04 | Austin | .80 | 590.00 | 472.00 | Revise offering memorandum (.80) |
| 10/14/04 | Hong | 5.50 | 385.00 | 2,117.50 | Review offering circular and description of notes |
| 10/14/04 | Hodges | 4.60 | 400.00 | 1,840.00 | Review of offering circular |
| 10/15/04 | Ritchie | 0.50 | 395.00 | 197.50 | Review final offering circular |
| 10/15/04 | Tyras | 8.00 | 445.00 | 3,560.00 | Attend negotiation session for description of notes and offering circular at financial printer (4.0); . . .revise offering memorandum (4.0) |
| 10/22/04 | Tyras | 16.00 | 445.00 | 7,120.00 | Review and provide comments to purchase agreement, legal opinions, indenture, supplemental indenture, comfort letter and offering circular (15.5); confer with working group regarding same (.5) |
| 10/22/04 | Saks | 2.00 | 470.00 | 940.00 | . . . review, comment on final offering circular (2.0) |
| 10/23/04 | Saks | .50 | 470.00 | 235.00 | . . . review, comment on final offering circular (.5) |
| 10/24/04 | Danes | 3.00 | 370.00 | 1,110.00 | . . . telephone conference with J. Tyras regarding offering memorandum and note indenture (.5); review offering memorandum and note indenture (2.0); telephone conferences with M. Kahn regarding same (.5) |
| 10/24/04 | Saks | .50 | 470.00 | 2,350.00 | . . . review, comment on final offering circular (.5) |
| 10/25/04 | Danes | 4.60 | 370.00 | 1,702.00 | Review offering circular and note indenture (2.0); . . . prepare comments to offering circular (2.0); correspondence  and multiple telephone conferences with J. Tyras regarding offering circular (.3); . . .conferences with M. Kahn regarding offering circular (.3) |
| 10/25/04 | Austin | 2.00 | 590.00 | 1,180.00 | . . . revise final offering memorandum to update for current bankruptcy developments (2.0); . . . |
| 10/25/04 | Sachs | 1.00 | 425.00 | 425.00 | . . . review offering circular (1.0); . . . |

**FEE AUDITOR'S REPORT** - Page 52
nor FR Paul Hastings 3rd 4th 5th int Final 9.03-11.04.wpd

| 10/26/04 | Danes | 3.00 | 370.00 | 1,110.00 | Prepare comments to offering circular (3.0) . . . |
|----------|-------|------|--------|----------|--------------------------------------------------|
| 10/26/04 | Patrizia | 0.40 | 565.00 | 226.00 | Review final revisions to offering circular (.4) . . . |
| 10/26/04 | Austin | 1.80 | 590.00 | 1062.00 | Revise final offering memorandum on senior notes (1.80) . . . |
| 10/26/04 | Iredale | .20 | 560.00 | 112.00 | . . . review offering circular (.1); reply to J. Tyras' request for comments (.1). . . |

Exhibit D

| | | | | | Original Entry | *Paul Hastings' Response* |
|---|---|---|---|---|---|---|
| 09/02/04 | Melissa C. Schwartz | 8.00 | 400.00 | $3,200.00 | Attend to matters regarding closing of exit facility | *Prepare comments to draft credit agreement (4.0); coordinate delivery of comments to credit agreement (2.0); review draft offering memorandum for senior notes (2.0)* |
| 09/07/04 | Melissa C. Schwartz | 3.00 | 400.00 | $1,200.00 | Attend to matters regarding closing of exit facility | *Review draft offering memorandum for senior notes (2.0); review correspondence relating to filing of certain loan documents (1.0)* |
| 09/15/04 | Melissa C. Schwartz | 2.00 | 400.00 | $800.00 | Attend to matters regarding closing of exit facility | *Work on payoff letters and related materials for Bank One facility (1.0); review revisions to offering memorandum for senior notes (1.0)* |
| 09/23/04 | Melissa C. Schwartz | 3.00 | 400.00 | $1,200.00 | Attend to matters regarding closing of exit facility | *Review matters relating to structure of credit facility (1.5); review revisions to senior notes offering memorandum (1.5)* |

<u>Response Exhibit 1</u>

      Paul Hastings believes that the conferences identified in Paragraph 4 of the Initial Report and the attendance at such conferences by its professionals is necessary to efficiently manage the Debtor's bankruptcy proceeding.  Given the size of this case and the complex business, regulatory and legal issues facing the Debtor, Paul Hastings has found it necessary to hold regular conferences with its attorneys, local counsel and various client representatives.  Attendance at these regularly scheduled conferences is a critical component of Paul Hastings' efficient management of the Debtor's bankruptcy proceeding.  Debtor's regulated business operations require Paul Hastings lawyers' focus on specific business, regulatory and legal areas.  The team meetings ensure that all parties are aware of business and legal developments, thus allowing Paul Hastings to implement, revise and refine ongoing legal strategies designed to allow the Debtor to exit these proceedings as soon as possible.

      Regularly scheduled conferences are also used by senior bankruptcy counsel to supervise junior lawyers and confirm legal services being delivered are appropriate and consistent with overall strategy.  On a regular basis, the Debtor's management and co-bankruptcy counsel, located in multiple locations and time zones, join the conferences to discuss pending matters as well as to develop and refine responses to creditors and refine and update legal and business strategy.

      Lastly, conference calls are used as a means to discuss and resolve issues and obtain factual information necessary for the completion of a variety of tasks performed by multiple Paul Hastings professionals.  Participation in the conference calls as a group eliminates the need (and scheduling difficulty) in coordinating multiple one-on-one calls between individual professionals tasked with supervising professionals and consistently implementing various legal strategies.  It is our practice not to have all of the professionals attend each scheduled conference call but have professionals attend on an as needed basis.  The individual professionals attend only to the extent necessary to deal with the matters for which they are responsible and are permitted to leave the conference or exit the call once their matters have been addressed.  Moreover, as attorneys complete NOR related projects they are rotated off this matter and no longer participate in the conferences.  The same is true of paralegals and case clerks.  Paul Hastings' adjusts the composition of the calls so only those truly necessary participate.

As requested, the following is an identification of the professionals identified in Paragraph 4 of the Initial Report as having attended conferences with a brief description of their expertise or responsibilities on Debtor's bankruptcy matters:

ac.    <u>May 6, 2004 meeting attended by CCC5, KKD, SW9 AND BG3</u>.  The May 6, 2004 meeting was held to prepare for the May 17, 2004 hearing for approval of the Debtor's disclosure statement. The meeting included discussion of confirmation notice procedures, exhibits and hearing notebooks. As the agenda indicates, a copy of which is attached as Response Exhibit 3, a number of substantive matters were heard on May 17, 2004 and preparing for the hearing required each of the individuals identified.

Karol K. Denniston (KKD) – Of Counsel, Lead senior bankruptcy professional responsible for developing and implementing strategy for managing and addressing operational and case administration matters including preparing for and handling omnibus hearings; supervising Paul Hastings associates and coordinating accounting and restructuring services provided by other outside retained professionals.

Carolyn Chayavadhanangkur (CCC5) – Bankruptcy associate primarily responsible for research and drafting of bankruptcy pleadings and briefs; responsible for preparing weekly status memoranda used to keep all professionals (Paul Hastings and other retained professionals) and Debtor's management and key personnel apprised of bankruptcy process.

Case clerks – Paul Hastings utilizes a number of case clerks whose primary responsibilities have included (i) identifying and organizing documents necessary for discovery requests; (ii) assistance with due diligence; (iii) maintenance of files; (iv) preparation of hearing binders and exhibits; and (v) general attorney support. Ben Gillespie (BG3) and Sofia Weksler (SW9) provide (or have provided) case clerk services for Paul Hastings in this bankruptcy proceeding.

b.    May 11, 2004 meeting attended by DLN2, KKD, CCC5, BG3, SZS and SW9.  Please see response above for Karol K. Denniston (KKD), Carolyn Chayavadhanangkur (CCC5) and the case clerks (BG3 and SW9).  The May 11, 2004 meeting is a continued team meeting to prepare for the May 17, 2004 disclosure statement and omnibus hearing.

Devora Nealy (DLN2) – Senior paralegal primarily responsible for monitoring case docket, coordinating communications with Debtor and all professionals through Intralinks network, monitoring credit inquiries and maintaining Debtor's files and websites.

Stephen Starr (SZS) – Bankruptcy associate primarily responsible for bankruptcy pleadings in connection with professional retention matters, claims review and workers' compensation litigation.

Response Exhibit 2

| Flight Segments | Timekeeper | Charge | Reason for Travel |
|---|---|---|---|
| Atlanta to Philadelphia to Atlanta | 2/16/04 K. Denniston | $440.00 | Prepare client for and attend February omnibus hearing.  The cost was split with another client. |
| Atlanta to Philadelphia to Atlanta | 2/16/04 C. Chayavadhanangkur | $906.20 | Prepare client for and attend February omnibus hearing |
| Atlanta to New York to Atlanta | 3/17/2004 J. Austin | $1,347.70 | Prepare for and participate in meeting with GE and Mellon regarding Colstrip lease modifications |
| Atlanta to New York to Atlanta | 4/19-20/04 J. Austin | $1,510.70 | Prepare for and attend meetings with Avaya representative, Harbert and Wilmington Trust representatives and Committee counsel |
| Atlanta to New York to Atlanta | 4/28-30/04 J. Austin | $1,510.70 | Client preparation for and attendance at deposition of B. Austin |
| Atlanta to New York to Atlanta | 4/4/04 D. Cartee | $1,322.70 | Prepare due diligence room in response to discovery requests |
| Atlanta to New York to Atlanta | 4/7/04 M. Kelly | $1,322.71 | Prepare due diligence room in response to discovery requests |
| Atlanta to New York to Atlanta | 4/19/04 P. Wolf | $1,510.70 | Prepare due diligence room in response to discovery requests |
| Atlanta to New York to Atlanta | 5/11-5/13/04 J. Austin | $1,510.70 | Preparation for and participation in depositions of B. Dietz, J. Harris, and A. Yearley |
| Atlanta to New York to Atlanta | 3/22/04 K. Denniston | $1,510.70 | Prepare for and attend meeting with counsel for Cornerstone regarding Cornerstone claims |
| Atlanta to New York to Atlanta | 4/7/04 K. Denniston | $1,510.70 | Prepare client for and attend April omnibus hearing |
| Atlanta to New York to Atlanta | 4/19/04 K. Denniston | $1,510.70 | Coordinate preparation of due diligence room in response to discovery requests |
| Atlanta to New York to Atlanta | 5/2-5/4/04 P. Wolf | $1,497.70 | Prepare due diligence room in response to discovery requests |
| Atlanta to New York to Atlanta | 4/7/04 D. Nealy | $933.71 | Prepare due diligence room in response to discovery requests |
| Atlanta to New York to Atlanta | 4/5/04 B. Gilliespie | $808.71 | Prepare due diligence room in response to discovery requests |
| Atlanta to New York to Atlanta | 4/16/04 A. Scott | $447.70 | Prepare for and attend meeting with client representatives regarding litigation claims and objections |
| Total | | $19,602.03 | |

<u>Response Exhibit 4</u>

Paul Hastings believes that the conferences identified in Paragraph 5 of the Initial Report and the attendance at such conferences by its professionals is necessary to efficiently manage the Debtor's bankruptcy proceeding.  Given the size of this case and the complex business, regulatory and legal issues facing the Debtor, Paul Hastings has found it necessary to hold regular conferences with its attorneys, local counsel and various client representatives.  Attendance at these regularly scheduled conferences is a critical component of Paul Hastings' efficient management of the Debtor's bankruptcy proceeding.  Debtor's regulated business operations require Paul Hastings lawyers' focus on specific business, regulatory and legal areas.  The team meetings ensure that all parties are aware of business and legal developments, thus allowing Paul Hastings to implement, revise and refine ongoing legal strategies designed to allow the Debtor to exit these proceedings as soon as possible.

Regularly scheduled conferences are also used by senior bankruptcy counsel to supervise junior lawyers and confirm legal services being delivered are appropriate and consistent with overall strategy.  On a regular basis, the Debtor's management and co-bankruptcy counsel, located in multiple locations and time zones, join the conferences to discuss pending matters as well as to develop and refine responses to creditors and refine and update legal and business strategy.

Lastly, conference calls are used as a means to discuss and resolve issues and obtain factual information necessary for the completion of a variety of tasks performed by multiple Paul Hastings professionals.  Participation in the conference calls as a group eliminates the need (and scheduling difficulty) in coordinating multiple one-on-one calls between individual professionals tasked with supervising professionals and consistently implementing various legal strategies.  It is our practice not to have all of the professionals attend each scheduled conference call but have professionals attend on an as needed basis.  The individual professionals attend only to the extent necessary to deal with the matters for which they are responsible and are permitted to leave the conference or exit the call once their matters have been addressed.  Moreover, as attorneys complete NOR related projects they are rotated off this matter and no longer participate in the conferences.  The same is true of paralegals and case clerks.  Paul Hastings' adjusts the composition of the calls so only those truly necessary participate.

As requested, the following is an identification of the professionals identified in Paragraph 5 of the Initial Report as having attended conferences with a brief description of their expertise or responsibilities on Debtor's bankruptcy matters:

a.      <u>June 28, 2004 meeting attended by DLM, GAC, JAR, JHA</u>.  The June 28, 2004 meeting focused on preparing for the mediation of *McGreevey, et al. v. Montana Power Company, et al.*, Case No. CV 03-01-BU-SHE, United States District Court for the District of Montana (the "McGreevey Litigation") and related claim filed in the Debtor's bankruptcy case.  On or about July 10, 2004, the parties participated in a non-binding mediation.  As a result of the lengthy mediation, a tentative settlement was reached under which the Debtor's only obligations would be to cause its

insurers to deliver the sum of $67,000,000 in full settlement and compromise of the claims and for the full release and discharge, and as applicable withdrawal, of any and all claims and causes of actions asserted or filed and which could have been asserted or filed with respect to the claims. On or about August 13, 2004, the Debtor filed its Motion for Order Pursuant to Bankruptcy Rule 9019 Approving Memorandum of Understanding (Docket No. 1902) which describes the settlement in greater detail. The motion is still pending before the Court.

Donald L. Morrow (DLM) – Partner, Litigation partner primarily responsible for litigating and advising the client in connection with the McGreevey Litigation. Mr. Morrow concentrates his practice in complex commercial, real estate and intellectual property litigation and has tried more than 35 cases to judgment, both jury and non-jury.

Grace A. Carter (GAC) – Partner, Litigation partner responsible for litigating and advising the client in connection with the McGreevey Litigation, including coordinating representation of the client in the various securities lawsuits including the McGreevey Litigation and the NorthWestern Securities Class Action.

John A. Reding (JAR) – Partner, Litigation partner, along with Ms. Carter, responsible for litigating and advising the client in connection with the McGreevey Litigation, including coordinating representation of the client in the various securities lawsuits including the McGreevey Litigation and the NorthWestern Securities Class Action.

Jesse H. Austin, III (JHA) – Partner, Lead bankruptcy partner responsible for overall bankruptcy proceeding and negotiating and implementing strategy for Debtor's restructuring efforts, including advising the client on the impact of negotiations and settlements of the McGreevey Litigation on the bankruptcy proceeding and obtaining bankruptcy court approval of any settlements reached in the various securities lawsuits.

b.      July 9, 2004 meeting attended by JHA, KC, MRK, SRK. The July 9, 2004 meeting was necessary to prepare for and implement strategies for the Debtor's exit from Chapter 11. As a result of various meetings, Paul Hastings assisted the Debtor in finalizing the senior credit agreement and completing the offering memorandum for the $225 million senior secured notes portion of the exit financing. Through November 1, 2004 (the "Effective Date"), Paul Hastings' professionals spent a significant amount of time structuring, negotiating, and implementing the Debtor's exit financing, post-confirmation securities offering and registration of the Debtor's common stock on the NASDAQ Stock Market Exchange. The July 9, 2004 meeting was necessary to coordinate the efforts of the professionals involved in the exit financing, the bond financing and the notes offering which allowed the Debtor's Plan to become effective within thirty (30) days following confirmation.

Jesse H. Austin, III (JHA) – Partner, Lead bankruptcy partner responsible for overall bankruptcy proceeding, negotiating and implementing strategy for Debtor's restructuring efforts. Mr. Austin is primarily responsible for providing information to the counsel for the Creditors

Committee regarding strategy for the Debtor's restructuring efforts, including negotiating and implementing financing and negotiating with the Debtor's lenders and subdebtholders.  As lead bankruptcy partner, Mr. Austin is responsible for coordinating the Debtor's exit from bankruptcy including the exit financing, first mortgage bonds, bond financing and notes offering.

Kevin Conboy (KC) – Partner, Corporate lending partner responsible for advising on the exit financing and other financing related matters.  Mr. Conboy was responsible for negotiating the exit financing, including handling issues related to the exit financing and first mortgage bonds and advising on the Debtor's obligations under the existing credit facility.  Mr. Conboy is responsible for overseeing junior professionals in connection with preparation of the exit loan documentation.

Marguerite R. Kahn (MRK) – Partner, Lead professional responsible for advising the client on and negotiating the bond financing in connection with the Debtor's exit from bankruptcy.  Ms. Kahn is responsible for overseeing junior professionals in connection with the review of the first mortgage indentures and implementation of the bond financing.

Scott R. Saks (SRS) – Of Counsel, Lead professional responsible for advising the client on and negotiating and preparing documentation in connection with the notes.  Mr. Saks is responsible for preparing and ensuring compliance with the requirements of U.S. securities laws.

c.     August 11, 2004 meeting attended by SZS. KKD, CCC, LMN.  The August 11, 2004 meeting was necessary to discuss the strategy in connection with the Debtor's non-qualified benefit plans.  The Debtor anticipates rejecting and terminating certain non-qualified plans.  The meeting was necessary to coordinate the efforts of Paul Hastings bankruptcy and employment professionals.  In particular, the professionals discussed rejection and termination damages, pleadings and objections to claims.  On or about August 31, 2004, the Debtor filed its Motion Pursuant to §§ 105(a) and 363 of the Bankruptcy Code Authorizing Debtor to Terminate Certain Non-Qualified Retirement Plans [Docket No. 2018].  Paul Hastings professionals continue to assist the Debtor in reviewing its other non-qualified benefit plans and prepare pleadings in connection with such plans.

Karol K. Denniston (KKD) – Of Counsel, Lead senior bankruptcy professional responsible for developing and implementing strategy for managing and addressing operational and case administration matters including preparing for and handling omnibus hearings; supervising Paul Hastings associates and coordinating the Debtor's due diligence and responses to claims in connection with its benefit plans.

Stephen Starr (SZS) – Bankruptcy associate primarily responsible for preparing motions addressing the termination of the non-qualified plans and analyzing claims related matters.

Carolyn Chayavadhanangkur (CCC5) – Bankruptcy associate primarily responsible for reviewing client documents and drafting and revising the provisions of the Debtor's Plan and Disclosure Statement related to the benefit plans to ensure consistency with the Debtor's strategy.

Lynda M. Noggle (LMN) – Employment associate primarily responsible for reviewing benefit plans and employee claims in connection with such benefit plans. Ms. Noggle was responsible for assisting the client with its analysis of its benefit plans and the individual claims filed in connection with the benefit plans.

d.    <u>August 16, 2004 meeting attended by DLM, GAC, JAR and JHA</u>. Please see response above for the professionals in attendance at the August 16, 2004 meeting. The meeting was to provide the primary Paul Hastings' professionals with an update of the status of the settlement of the McGreevey Litigation and the treatment of such claims under the Debtor's Plan. As discussed above, the Debtor filed a motion to approve the settlement of the McGreevey Litigation. As set forth in the memorandum of understanding, the parties continued to cooperate in preparing a stipulation of settlement embodying the terms set forth in the memorandum of understanding. The meeting was necessary to discuss strategies for finalizing the stipulation of settlement and for attaining approval of the settlement by both the bankruptcy court and the district court.

Response Exhibit 5

| Timekeeper | Type | Actual Charge | Total if Recommended Ceiling is Applied |
|---|---|---|---|
| 6/20-23/04 J. Austin (2) | *Dinner* | $121.02 | $100.00 |
| 5/17/04 K. Denniston (7) | *Breakfast and Lunch* | $280.26 | $280.00 |
| 6/10/04 K. Denniston (4) | *Dinner* | $166.28 | $166.28 |
| 5/25/04 K. Denniston (4) | *Dinner* | $186.11 | $0.00 |
| 5/26/04 K. Denniston (4) | *Dinner* | $164.74 | $0.00 |
| 5/26/04 K. Denniston (4) | *Lunch* | $112.59 | $100.00 |
| 5/4/04 J. Reding (5) | *Dinner* | $236.00 | $236.00 |
| 5/25/04 K. Denniston (4) | *Dinner* | $186.11 | $186.11 |
| 5/26/04 K. Denniston (4) | *Dinner* | $164.74 | $164.74 |
| 8/5/04 J. Austin (4) | *Dinner* | $231.11 | $200.00 |
| 8/6/03 J. Austin (4) | *Dinner* | $231.11 | $200.00 |
| 8/18/04 J. Austin (4) | *Dinner* | $222.81 | $200.00 |
| 8/23/04 J. Austin (7) | *Dinner* | $620.44 | $350.00 |
| 7/26/04 K. Denniston (7) | *Dinner* | $632.26 | $350.00 |
| 7/27/04 K. Denniston (2) | *Dinner* | $73.21 | $73.21 |
| 7/30/04 K. Denniston (2) | *Lunch* | $73.00 | $50.00 |
| 7/30/04 K. Denniston (2) | *Dinner* | $81.11 | $81.11 |
| 7/27/04 J. Kleiman (3) | *Dinner* | $92.84 | $92.84 |
| 7/28/04 T. Pollock (5) | *Lunch* | $217.76 | $125.00 |
| 7/13-15/04 J. Austin (3) | *Dinner* | $239.50 | $150.00 |
| 7/13-15/04 J. Austin (3) | *Dinner* | $181.90 | $150.00 |
| 6/20/04 K. Denniston (3) | *Dinner* | $187.95 | $150.00 |
| 6/24/04 K. Shryock (1) | *Lunch* | $106.21 | Lunch – 12.81 Meal (Breakfast - 8) - $93.40 |
| 7/19-21/04 J. Austin (4) | *Dinner* | $297.18 | $200.00 |
| 5/1/04 K. Denniston (1) | *Dinner* | $50.00 | $50.00 |
| 7/22/04 M. Kelley (3) | *Dinner* | $101.93 | $101.93 |
| 7/21/04 J. Kleiman (2) | *Dinner* | $97.00 | $97.00 |
| 7/22/04 J. Kleiman (2) | *Dinner* | $90.00 | $90.00 |
| 7/9-11/04 J. Austin (2) | *Dinner* | $105.86 | $100.00 |
| 6/22/04 J. Austin (2) | *Dinner* | $93.40 | $93.40 |
| 6/22/04 J. Austin (2) | *Dinner* | $97.79 | $97.79 |
| Total | | $5,742.22 | $4,341.62 |

<u>Response Exhibit 7</u>

<u>Response</u>:  Paul Hastings believes that the conferences and closings identified in subsections a-d of Exhibit B above and the attendance at such conferences by its professionals is necessary to efficiently manage the Debtor's bankruptcy proceeding.  Given the size of this case and the complex business, regulatory and legal issues facing the Debtor, Paul Hastings has found it necessary to hold regular conferences with its attorneys, local counsel and various client representatives.  Attendance at these regularly scheduled conferences is a critical component of Paul Hastings' efficient management of the Debtor's bankruptcy proceeding.  Debtor's regulated business operations require Paul Hastings lawyers' focus on specific business, regulatory and legal areas.  The team meetings ensure that all parties are aware of business and legal developments, thus allowing Paul Hastings to implement, revise and refine ongoing legal strategies designed to allow the Debtor to exit these proceedings as soon as possible.

Regularly scheduled conferences are also used by senior bankruptcy counsel to supervise junior lawyers and confirm legal services being delivered are appropriate and consistent with overall strategy.  On a regular basis, the Debtor's management and co-bankruptcy counsel, located in multiple locations and time zones, join the conferences to discuss pending matters as well as to develop and refine responses to creditors and refine and update legal and business strategy.

Conference calls are used as a means to discuss and resolve issues and obtain factual information necessary for the completion of a variety of tasks performed by multiple Paul Hastings professionals. Participation in the conference calls as a group eliminates the need (and scheduling difficulty) in coordinating multiple one-on-one calls between the individual professionals tasked with supervising professionals and consistently implementing various legal strategies.   It is our practice not to have all of the professionals attend each scheduled conference call but have professionals attend on an as needed basis.  The individual professionals attend only to the extent necessary to deal with the matters for which they are responsible and are permitted to leave the conference or exit the call once their matters have been addressed. Moreover, as attorneys complete NOR related projects they are rotated off this matter and no longer participate in the conferences.  The same is true of paralegals and case clerks.  Paul Hastings' adjusts the composition of the calls so only those truly necessary participate.

Lastly, Paul Hastings notes that this case required expertise well beyond that of general bankruptcy expertise.  As the fee applications themselves indicate, the following specialized expertise were utilized by the Debtor: (i) bond issuance; (ii) employment matters; (iii) environmental matters; (iv) federal, state and local tax issues; (v) finance matters (DIP financing and exit financing); (vi) fresh start accounting; (vii) litigation; (viii) NASDAQ listing; (ix) note issuance; (x) regulatory issues (FERC and state regulations); and (xi) securities issues (public disclosure, corporate governance, and Sarbannes-Oxley compliance).  As the list indicates, it was necessary to involve different lawyers based on their experience and expertise at different points of the case.  It should be noted that Jess Austin and Karol Denniston closely monitored the use of all lawyers and lawyers were rotated off the file when no longer needed or consulted with on a limited basis when highly specialized legal

expertise was required.  This case was handled very efficiently as a highly contested plan was confirmed in thirteen months and a complicated exit financing, bond and note issuance and NASDAQ listing was successfully effectuated and closed.  This could not have been accomplished without the Paul Hastings professionals involved.[1]

As requested, the following is an identification of the professionals identified on Exhibit B as having attended conferences or closings with a brief description of their expertise or responsibilities on Debtor's bankruptcy matters:

Jess Austin (JHA) – Lead bankruptcy partner responsible for overall bankruptcy proceeding, negotiating and implementing strategy for Debtor's restructuring efforts, negotiating and implementing DIP financing and negotiating with the Debtor's lenders and subdebtholders.  Mr. Austin is also responsible for discussions with the Debtor's various regulators, including the Montana Public Service Commission and the Consumers Counsel.  Lastly, Mr. Austin, along with Ms. Denniston, is responsible for plan strategy and development and negotiation of the Debtor's disclosure statement and plan of reorganization.

Karol Denniston (KKD) – Of Counsel (now partner), Lead senior bankruptcy professional responsible for developing and implementing strategy for managing and addressing operational and case administration matters including preparing for and handling omnibus hearings; supervises Paul Hastings associates and coordinates accounting and restructuring services provided by other outside retained professionals.  In connection with closing, was responsible for coordinating the various closing teams and negotiating matters relating to the D&O Trust.

Kevin Conboy (KC) - Partner in charge of closing the $225,000,000 Exit Credit Facility for NorthWestern Corporation, agented by Lehman Commercial Paper Inc. as Administrative Agent and as Collateral Agent.  This role also involved negotiating and finalizing the Credit Agreement and ancillary loan documents, review of Paul Hastings' legal opinion, coordinating with the high-yield team led by Scott Saks and Jon Tyras, and coordinating with Marguerite Kahn and her team, who were responsible for the issuance of first mortgage bonds (which served as collateral for the Credit Agreement as well as the Senior Notes).

Marguerite Kahn (MRK) – Partner whose primary responsibilities with respect to the NorthWestern exit financing were (i) the first mortgage bonds (and the related supplements to the first mortgage), and (ii) the opinions of counsel delivered by Paul Hastings and various local counsel.  Prepared, negotiated and revised successive drafts of the first mortgage bonds and the related supplements to the first mortgages and reviewed and provided extensive comments with respect to successive drafts of the note indenture and the credit agreement (with emphasis on

---

[1] For greater detail as to the activities involved in Debtor's exit from Chapter 11 on the effective date, please see Debtor's Notice of Substantial Consummation attached hereto as Paul Hastings Supplement 2.

the provisions pertaining to the first mortgage bonds and the first mortgage bond indentures). In addition, provided oversight with respect to the documents required under the first mortgages with respect to the issuance of the first mortgage bonds, including, specifically and with the greatest amount of negotiation, the certificate of the independent investment bank. In the course of reviewing and negotiating opinions of counsel, reviewed provisions of local real estate law pertaining to recording requirements.

Michael L. Zuppone (MLZ) – Partner whose primary responsibilities include advising the board and various committees on corporate governance matters, and oversight for Exchange Act filings including Forms 10-Q and 8-K.

Scott R. Saks (SRS) – Of Counsel primarily in charge of closing the $225 million bond offering. This role involved negotiating and finalizing the underwriting agreement, preparing the offering memorandum and coordinating with underwriters' counsel.

Karen Leach (KKL5) – Corporate associate primarily responsible for implementing D&O Trust and stock and warrant issuances through the transfer agent and Depository Trust Corporation at the effective date of Debtor's confirmed plan.

Stan F. Wasowski (SFW) – Corporate associate primarily responsible for claims objections and resolutions, contract assumption and rejection and coordination of cash payments at the effective date of Debtor's confirmed plan.

Carolyn Chayavadhanangkur (CCC5) – Bankruptcy associate primarily responsible for research and drafting of bankruptcy pleadings and briefs; responsible for preparing weekly status memoranda used to keep all professionals (Paul Hastings and other retained professionals) and Debtor's management and key personnel apprised of bankruptcy process.

Martha B. Kelley (MBK3) – Corporate associate primarily responsible for drafting fee applications and compliance with US Trustee guidelines.

Asa R. Danes (ARD) – Corporate associate primarily responsible for preparing the necessary documentation for the first mortgage bonds that were issued as collateral for both the high-yield note offering and the credit facility. Also assisted in preparing portions of the note offering documents that pertained to the first mortgage bonds and working with internal and local counsel to prepare the legal opinions delivered in connection with the note offering, the credit facility and the first mortgage bonds.

Omri Sachs (OS) – Corporate associate primarily responsible for reviewing and revising supplemental indentures to the Montana and South Dakota indentures as well as negotiating final comments to supplemental indentures with lenders' counsel. Also assisted in distribution of final documents, review and revisions to legal opinions and finalization of supplemental indentures and promissory notes.

Scott C. Kline (SCK) – Corporate associate primarily responsible for negotiating registration rights and warrant agreements relating to stock and warrant issuances at the effective date of the confirmed plan. Also responsible for Nasdaq listing application.

Jonathan Tyras (JCT) – Corporate associate primarily responsible for negotiating and finalizing indenture, supplemental indenture, forms of notes and legal opinions and coordination of execution and delivery of same and other closing requirements for issuance of the senior secured notes in connection with the exit financing for Debtor's exit from Chapter 11.

Devora Nealy (DLN2) – Senior paralegal primarily responsible for monitoring case docket, coordinating communications with Debtor and all professionals through Intralinks network, monitoring creditor inquiries and maintaining Debtor's files and websites.

Keith M. Wixson (KMW) – Paralegal primarily responsible for assisting in the preparation of necessary documentation for the first mortgage bonds that were issued as collateral for both the high-yield note offering and the credit facility. Also responsible for document distribution to all parties (trustees, lenders, local counsel, etc.) and preparation of closing binders.

<u>Response Exhibit 8</u>

Multiple professionals attended hearings only when necessary to efficiently manage the case and/or specific matters presented on the hearing's agenda. In particular, as detailed below, multiple attorneys attended hearings to address particular motions scheduled for such hearing. Paul Hastings believes that the hearings in the case have been handled in the most efficient manner possible minimizing the time spent in Court by not only Paul Hastings but the other professionals as well. This is particularly true since, with limited exceptions, all motions are heard during the monthly omnibus hearings. This requires the Debtor to be ready to address multiple matters as well as put on witnesses and introduce evidence necessary to respond to contested matters.

Attached as Paul Hastings Supplement 3 is the agenda from the September 15, 2004 hearing. As the agenda reflects, 34 matters were addressed and substantive hearings held on approximately 4 of those matters. Mr. Austin and Ms. Denniston were responsible for separate matters and associates present to assist with evidence, negotiation of, and revisions to, the court orders entered. As requested, the following is an identification of the professionals identified above as having attended the referenced hearing with a brief description of their expertise or responsibilities on Debtor's bankruptcy matters:

> Jess Austin (JHA) – Lead bankruptcy partner responsible for overall bankruptcy proceeding, negotiating and implementing strategy for Debtor's restructuring efforts, negotiating and implementing DIP and exit financing and negotiating with the Debtor's lenders and subdebtholders. Mr. Austin is also responsible for discussions with the Debtor's various regulators, including the Montana Public Service Commission and the Consumers Counsel. Lastly, Mr. Austin, along with Ms. Denniston, is responsible for plan strategy and development and negotiation of the Debtor's disclosure statement and plan of reorganization. Mr. Austin handled the contested hearings relating to the exit facility and PPL Montana.

> Karol Denniston (KKD) – Of Counsel at time of hearing (now partner) and Lead bankruptcy professional responsible for handling the agenda and for arguing motions and examination of witnesses relating to professional fee applications, general claims objections and various stipulations and housekeeping details.

With respect to the October 8, 2004 hearing, this hearing represented the Court's lengthy oral ruling on confirmation following a hotly contested two-day confirmation hearing. In order to meet its November 1 deadline for going effective (which was contemplated by the Debtor's plan of reorganization and disclosure statement), Paul Hastings requested that at least one attorney from each group responsible for a vital effective date activity (i.e., closing of the Debtor's exit financing and bond offering, implementation of the D&O Trust and the issuance of stock and warrants) attend the

telephonic hearing so that exit tasks could be implemented thereafter as quickly as possible.[1]  In addition, as was expected, the Court's confirmation ruling has been appealed by Magten resulting in the need for research and briefing on the issues raised.  As requested, the following is an identification of the professionals identified above as having attended the referenced hearing with a brief description of their expertise or responsibilities on Debtor's bankruptcy matters:

Jess Austin (JHA) – Lead bankruptcy partner responsible for overall bankruptcy proceeding, negotiating and implementing strategy for Debtor's restructuring efforts, negotiating and implementing DIP and exit financing and negotiating with the Debtor's lenders and subdebtholders.  Mr. Austin, along with Ms. Denniston, is responsible for plan strategy and development and negotiation of the Debtor's disclosure statement and plan of reorganization. As to Debtor's confirmed plan, Mr. Austin coordinated all effective date activities and was primarily responsible for the closing of the exit financing.

Karol Denniston (KKD) – Of Counsel at time of hearing (now partner) and lead bankruptcy professional responsible for, along with Mr. Austin, plan strategy and development and negotiation of the Debtor's disclosure statement and plan of reorganization.  As to Debtor's confirmed plan, Ms. Denniston was primarily responsible for the implementation of the D&O Trust and the issuance of stock and warrants under the plan.

Carolyn Chayavadhanangkur (CCC5) – Bankruptcy associate primarily responsible for pleading preparation and briefing.  As a result of the referenced hearing, Ms. Chayavadhanangkur provided subsequent research support for issues that arose in the course of the Court's ruling.

Jonathan Tyras (JCT) – Corporate associate primarily responsible for negotiating and drafting the offering memorandum and related underwriting agreement in connection

with                    the closing of the bond offering.

---

[1] For greater detail as to the activities involved in Debtor's exit from Chapter 11 on the effective date, please see Debtor's Notice of Substantial Consummation.

Response Exhibit 9

The Debtor's ability to exit from Chapter 11 under the plan of reorganization confirmed by the Court depended, in part, on its ability to consummate the sale of $225 million in secured bonds. Since the offer and sale of the secured bonds constitutes the offering of a "security" under federal and state securities laws, the Debtor was required to comply not only with the applicable exemptions from registration, but also to provide adequate disclosure to investors as to the Debtor's operations, financial condition and risks of the investment. Failure to provide "adequate disclosure" could subject the Debtor to unwanted "10b-5" claims for material misrepresentations or omissions in the offering memorandum. The following represents a few of the categories of disclosure required to be set forth in the offering memorandum for which attorneys specializing in those areas were required to review and provide comments (since no single attorney or handful of attorneys can provide expertise in all of these areas): (i) description of the bankruptcy proceedings and risks of investing in a reorganized debtor; (ii) description of the Debtor's business operations; (iii) description of the governmental regulations applicable to utility companies; (iv) description of the Debtor's exit financing and collateral structure; (v) description of tax consequences applicable to holders of the bonds; (vi) description of the previous legal proceedings involving the Debtor; (vii) description of the plan of distribution relating to the underwritten notes; (viii) risks of investing in a regulated utility such as the Debtor and in the secured notes in general. As requested, the following is an identification of the professionals identified above (listed in alphabetical order) as having reviewed or participated in the preparation of the offering memorandum with a brief description of their area of expertise:

> Jesse H. Austin (JHA) – Partner whose practice is concentrated in bankruptcy law, particularly Chapter 11 reorganization cases and large commercial workouts. A principal focus of his workout and insolvency practice is the representation of institutional senior secured lenders in syndicated credit facilities, with particular experience in debtor-in-possession lending and in the healthcare, communications, retail and forest products industries. Mr. Austin provided review and comments on bankruptcy-specific issues disclosed in the offering memorandum.

> Grace A. Carter (GAC) – Partner whose practice involves complex commercial litigation representing clients in suits involving claims of securities fraud, unfair competition, unfair business practices, trade secrets and trademark infringement. Ms. Carter provided review and comments on litigation-specific issues disclosed in the offering memorandum.

> Kevin Conboy (KC) – Partner who practices in commercial lending and other corporate finance transactions. His practice includes cash-flow lending, asset-based lending, the financing of leveraged buyouts, bankruptcies, workouts, and loan restructurings. Mr. Conboy provided review and comments on credit-facility issues disclosed in the offering memorandum.

Asa R. Danes (ARD) – Associate in the corporate department. Mr. Danes facilitated the coordination of comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Kevin S. Evans (KSE) - Associate in the corporate department. Mr. Evans facilitated the coordination of comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Nancy L. Iredale (NLI) – Partner providing tax advice to international and domestic clients in all types of commercial transactions. She has provided structuring advice and tax opinion letters in numerous tax-free and taxable merger and acquisition transactions. Ms. Iredale provided review and comments on tax issues disclosed in the offering memorandum.

Euclid A. Irving (EAI) - Partner whose practice concentrates on the representation of lenders, developers, EPC contractors and investment banks in domestic and international project financings involving both energy projects and industrial projects. These facilities include electric generating facilities, gas gathering facilities, medium density fibreboard manufacturing facilities, and other manufacturing facilities. Mr. Irving provided review and comments on operations-specific issues disclosed in the offering memorandum.

Edward Han (EH) - Associate in litigation department. Mr. Han facilitated the coordination of comments from litigation specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Kelly W. Hodges (KWH) - Associate in the corporate department. Ms. Hodges facilitated the coordination of comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Kiara L. Hotte (KLH) – Associate in the corporate department. Ms. Hotte facilitated the coordination of comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Jennifer L. Hong (JLH) - Associate in regulatory department. Ms. Hong facilitated the coordination of comments from energy regulatory specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Marguerite R. Kahn (MRK) - Partner who regularly represents international banks and other financial institutions in credit transactions, including secured and unsecured loans, letter of credit facilities, commercial paper facilities, acquisition and recapitalization financings, real estate loans, project finance, and swaps. Ms. Kahn provided review and comments on bond and collateral-specific issues disclosed in the offering memorandum.

Scott C. Kline (SCK) - Associate in the corporate department.  Mr. Kline facilitated the coordination of comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Thomas P. McGovern (TPM) – Associate in the corporate department.  Mr. McGovern facilitated the coordination of comments from varioaus specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Timothy M. Muldoon (TMM) – Associate in the corporate department.  Mr. Muldoon facilitated the coordination of comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Charles A. Patrizia (CAP) –  Partner whose practice focuses on regulatory and trial proceedings, with a concentration in matters affecting energy and the environment.  Mr. Patrizia provided review and comments on regulatory-specific issues disclosed in the offering memorandum.

Thomas R. Pollock (TRP) – Partner in the corporate department representing issuers, investment banks, institutional investors and financial advisors in a variety of acquisition, finance and joint venture transactions. Mr. Pollock provided review and comments on corporate governance-specific issues disclosed in the offering memorandum.

David M. Ritchie (DMR) – Associate in the corporate department.  Mr. Ritchie facilitated the coordination of comments from tax specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Omri Sachs (OS) – Associate in the corporate department.  Mr. Sachs facilitated and provided comments on bond and collateral-related issues in the offering memorandum.

Scott R. Saks (SRS) – Of Counsel in the corporate department with extensive transactional corporate and securities experience representing underwriters, financial institutions and U.S. and foreign corporations in domestic and international public and private equity and high yield and investment grade debt offerings.  Mr. Saks provided review and comments on underwriting related disclosure and overall securities laws compliance.

Jonathan C. Tyras (JCT) – Associate in the corporate department.  Mr. Tyras facilitated comments from various specialties for inclusion in the offering memorandum and backup due diligence review to support disclosure.

Michael L. Zuppone (MLZ) – Partner in the corporate department practicing primarily in the area of corporate finance, general corporate law and mergers and acquisitions. Mr. Zuppone provided review and comments on securities laws issues in the offering memorandum