IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: NORTHWESTERN CORPORATION, Debtor. | Chapter 11<br>Case No. 03-12872 (JLP)<br>**Hearing Date: February 10, 2005 at 9:00 a.m. (E.T.)** |
|---|---|

**PAUL, HASTINGS, JANOFSKY & WALKER, LLP'S REPLY TO MAGTEN ASSET MANAGEMENT CORPORATION'S OBJECTION TO FINAL FEE APPLICATION [RE: D.I. 2432, 2527]**

Paul, Hastings, Janofsky & Walker, LLP ("Paul Hastings") files this response to Magten Asset Management Corporation's ("Magten") objection (the "Objection") to Paul Hastings' final application for fees and expenses dated as of December 1, 2004 (the "Final Fee Application") in connection with its representation of NorthWestern Corporation ("NorthWestern" or the "Debtor") in NorthWestern's Chapter 11 case[1] and shows as follows:

**PRELIMINARY STATEMENT**

1. Magten's Objection to the Final Fee Application is yet one more effort by Magten to harass NorthWestern and Paul Hastings to induce more favorable treatment under the confirmed plan and to reargue Magten's disqualification motion previously denied by this Court. Boiling down the Objection to its simplest terms, Magten reargues the disqualification motion for a third time and tries to muddle the facts related to Paul Hastings' voluntary withdrawal from certain discrete matters in the bankruptcy case.

2. It is well settled law that a Chapter 11 debtor, subject to counsel complying with

[1] On January 12, 2005, the Court granted the Motion of Paul, Hastings, Janofsky & Walker, LLP For Leave To File Paul, Hastings, Janofsky & Walker, LLP's Reply To Magten Asset Management Corporation's Objection To Final Fee Application. (D.I. 2581).

Section 327 of the Bankruptcy Code, has the right to choose counsel to represent it in reorganization proceedings. In this instance, after careful consideration, NorthWestern selected Paul Hastings to be its lead bankruptcy and restructuring counsel. After completing the bankruptcy court approval process, including supplemental disclosures, approximately five months after the filing of Northwestern's Chapter 11 petition, Magten began its formal quest to remove Paul Hastings from the bankruptcy case. In spite of Magten's efforts, Paul Hastings was allowed to continue as general bankruptcy and restructuring counsel to NorthWestern when the Bankruptcy Court denied Magten's motion to disqualify Paul Hastings by the Memorandum Decision entered on July 23, 2004 (the "Qualification Order") (D.I. 1751).

3. Even though Magten has appealed the Qualification Order, it failed to seek a stay of effectiveness of the Qualification Order pending the appeal. Thus, Paul Hastings, with the full knowledge of the Court, United States Trustee (the "Trustee") and all other parties-in-interest – specifically including Magten – continued to provide legal services to the Debtor in reliance on this Court's determination that Paul Hastings' retention was appropriate. These continued legal services led to the successful reorganization and confirmation of the Debtor's plan which became effective on November 1, 2004.

4. Magten's new strategy of objecting to the Final Fee Application is simply a "back door" argument that Paul Hastings should have had nothing to do with any issues relating to Magten's claims asserted in NorthWestern's Chapter 11 case separate and distinct from the adversary proceeding initiated by Magten and Law Debenture Trust Company of New York (the "Law Debenture") against NorthWestern (the "Magten Adversary Proceeding"). To accept such a position would deprive the Debtor of its chosen counsel, counsel whose employment was approved by this Court. After the issuance of the Qualification Order, besides the pending

appeal, Magten never formally or informally raised any objection to Paul Hastings' continued representation of the Debtor in the bankruptcy case. Indeed, Magten was well aware that Paul Hastings was taking the lead in presenting and arguing for confirmation of the Debtor's reorganization plan. This Court should not allow Magten to use the Final Fee Application as a means to prejudge the appeal or otherwise penalize Paul Hastings' successful implementation of a plan of reorganization that Magten did not support. Magten has lain in the weeds and is now attempting to ambush both the Debtor and Paul Hastings by seeking to deny payment for services rendered and expenses incurred by Paul Hastings which clearly led to the Debtor successfully reorganizing and expeditiously exiting Chapter 11.

5. In analyzing Magten's objections to Paul Hastings' Final Fee Application, this Court should not lose site of Magten's goal – continued obstreperous and harassing litigation in the hope that NorthWestern will concede to Magten a disproportionate distribution on account of its QUIPS holdings. Magten is nothing more than a "Johnny-come-lately", distressed vulture investor which purchased its QUIPS claims to obtain a blocking position in the QUIPS class with full knowledge of the completed transfer of assets from Clark Fork and Blackfoot, LLC ("Clark Fork") to NorthWestern. The Court should bear in mind that Magten purchased the majority of its QUIPS claims (a) in violation of an existing Order entered in NorthWestern's Chapter 11 case which prohibited the trading of claims while Magten was a member of the Committee, and (b) in violation of fiduciary duties owed by Magten to the Debtor and its creditors as a member or former member of the Committee as someone in possession or access to material non-public information.[2]

[2] On August 20, 2004, NorthWestern filed a Complaint against Magten and Talton R. Embry in the United States Bankruptcy Court of the District of Delaware, assigned adversary proceeding no. 04-53324(JLP) for, among other things, these breaches.

**PROCEDURAL HISTORY**

6. Because Magten's argument rests upon not only the issue of its appeal of the Qualification Order, but also Paul Hastings' representation of the Debtor in matters unrelated to the Magten Adversary Proceeding, below is a summary of the procedural history related to NorthWestern's retention of Paul Hastings as its general and lead counsel in this bankruptcy case and Magten's actions in opposition to NorthWestern and Paul Hastings.

**I. Retention of Paul Hastings and Fee Procedures**

7. On September 17, 2003, Paul Hastings filed its Application for Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) Authorizing the Employment and Retention of Paul, Hastings, Janofsky & Walker LLP as Attorneys for the Debtor (the "Application") (D.I. 40) and with the Notice of the Application (the "Notice") (D.I. 42) was served on the notice parties. Also attached to the Application was the Affidavit of Jesse H. Austin, III (the "Employment Affidavit") in support of the Application. (Attached to D.I. 40). The Notice scheduled a hearing on the Application for October 15, 2003 and an objection deadline of October 8, 2003. No objections were filed by the deadline and accordingly, on October 10, 2003, an Order (the "Employment Order") (D.I. 198) was entered authorizing Paul Hastings to serve as lead and general counsel to the Debtor. The Employment Order specifically found that Paul Hastings was a "disinterested person" as required by Section 327(a) of the bankruptcy code and further that Paul Hastings was authorized to perform any and all legal services for the Debtor that are necessary or appropriate in connection with this Chapter 11 Case. See Employment Order ¶¶ 2 and 5. On December 19, 2003, a supplemental affidavit was filed disclosing additional entities with an actual or potential interest in the Debtor's case which Paul Hastings had represented and/or continues to represent in matters unrelated to the Debtor (the

"First Supplement"). (D.I. 582). On June 16, 2004, a second supplemental affidavit was filed disclosing issues related to Netexit, Inc. and its subsidiaries which filed for bankruptcy on May 4, 2004, the compensation received by Paul Hastings related to Cornerstone Propane, L.P. and a statement related to the Magten suit filed against Paul Hastings (the "Second Supplement"). (D.I. 1488). On July 7, 2004, the affidavit of Jesse H. Austin, III in connection with Paul, Hastings, Janofsky & Walker, LLP's Employment as Attorneys for Debtor and Debtor-In-Possession disclosed Paul Hastings' representation of the Debtor and Clark Fork and Paul Hastings' relationship to Credit Suisse First Boston (the "Final Affidavit"). (D.I. 1625).

8. On October 10, 2003, the Administrative Order Establishing Procedures for Payment of Interim Compensation and Reimbursement of Expenses to Professionals was entered and on January 14, 2004, by consent, the Fee Procedure Order was amended (collectively, the "Fee Procedure Order"). (D.I. 699). Pursuant to the Fee Procedure Order, estate professionals, including Paul Hastings, were required to submit monthly statements to the Court and certain other interested parties and if no objections were received within twenty (20) days, the Debtor was authorized to remit payment of 80% of the uncontested fees and 100% of the uncontested expenses. The remaining 20% professional fees was held back pending approval of the final fee application filed in the case. Thereafter, every one hundred and twenty (120) days, each professional files an Interim Fee Application and pursuant to the confirmed plan of reorganization, all final fee application were due by December 1, 2004.

9. On March 10, 2004, with the consent of the parties, a Fee Auditor was appointed by the Court to review the fee applications and make recommendations to the Court on the allowance of the professionals fees. (D.I. 925).

10. Pursuant to the Fee Procedure Order, during the case Paul Hastings filed monthly

fee applications, four Interim Fee Applications and on December 1, 2004, Paul Hastings filed its Final Fee Application.

11. Other than comments from the Fee Auditor and resulting consensual reductions in fees, Paul Hastings did not receive any objections or other comments to any of its monthly or interim fee applications until the January 3, 2005 Objection filed by Magten to the Final Fee Application.

## II. Magten's Disqualification Efforts

12. The Debtor's bankruptcy case was filed on September 14, 2003. Magten was appointed to the Official Committee of Unsecured Creditors (the "Committee") on November 15, 2003.[3]

13. On March 11, 2004, the Debtor filed its Disclosure Statement and Plan of Reorganization which plan classified Magten with all other subordinated debt holders in Class 8, a class that was scheduled to receive approximately 4% on their allowed claims. Immediately thereafter, Magten began filing a series of motions and objections designed to increase its recovery on its claims. (D.I. 931).

14. The first action was taken on March 17, 2004 when Magten filed a Motion for Relief from the Automatic Stay (the "Lift Stay Motion") (D.I. 959) to commence litigation against the Debtor related to certain utility assets which were transferred by Clark Fork to Northwestern. Shortly thereafter, two separate creditors, Comanche Park, LLC ("Comanche Park") and certain former alleged Clark Fork creditors referred to herein as "McGreevey Class

[3] The Trustee appointed the initial members of the Committee on October 1, 2003. On November 25, 2003, the Trustee filed its third amended notice to reflect a resignation of a creditor and appointment of Magten to the Committee and on May 6, 2004, the Trustee filed its fifth amended notice to reflect the removal of Magten and Law Debenture from the Committee.

Claimants" filed joinders to the Lift Stay Motion. In good faith, the Debtor responded to the Lift Stay Motion and the two joinders to the Lift Stay Motion. Ultimately, an order was entered granting Magten relief from the stay to pursue its allegations against the Debtor, but denied the joinders filed by Comanche Park and McGreevey Class Claimants.[4]

15. On April 18, 2004, Magten, along with Law Debenture, filed an Adversary Proceeding in this Court against the Debtor, styled as Adversary Proceeding No. 04-53324 (CGC).

16. Further, Magten began filing opposition to the Debtor's attempts to move the case toward confirmation, including an objection to the disclosure statement on May 3, 2004 (D.I. 1203), an objection to the proposed memorandum of understanding resolving certain securities litigation on May 5, 2004 (D.I. 1219) and an objection to the settlement of certain alleged environmental claims on June 1, 2004. (D.I. 1394).

17. On May 11, 2004, despite having been granted relief from the automatic stay to pursue its alleged causes of action against Northwestern, Magten filed a statement pursuant to Section 328(c) regarding Paul Hastings (the "328(c) Statement"). (D.I. 1272). The 328(c) Statement alleged Paul Hastings was not a disinterested person as defined under Sections 101(14) and 1107(b) of the Bankruptcy Code due to its prepetition representation of Clark Fork.

18. On May 19, 2004, Magten also filed a formal Complaint and Demand for Jury Trial against Paul Hastings, Case No. DV-04-131, Montana Second Judicial District Court, Silver Bow County (the "Magten Paul Hastings Litigation").[5]

---

[4] Subsequently, on April 29, 2004, Comanche filed a Motion for Relief from Stay and on May 12, 2004 the McGreevey Class Claimants filed a Motion for Relief from Stay.

[5] This case was subsequently removed to the District of Delaware and is the subject of a Motion to Stay pending the outcome of the Magten Adversary Proceeding.

19. On June 2, 2004, Paul Hastings filed its response to the 328(c) Statement (D.I. 1395) and on June 16, 2004 the Second Supplement was filed. (D.I. 1488). In the Second Supplement, Jesse H. Austin, III confirmed his oral representations to the Court by stating "[a]s a result of the filing of the Magten Paul Hastings Litigation and in order to avoid any potential or appearance of any conflict of interest, all matters relating to the Magten Adversary Proceeding have been transferred to Greenberg Traurig LLP. Paul Hastings is no longer handling matters related to the Magten Adversary Proceeding." See Second Supplement ¶13.

20. Apparently unsatisfied by the 328(c) Statement and the Second Supplement, on June 18, 2004, Magten formally filed a Motion to Disqualify Paul Hastings as counsel to the Debtor (the "Disqualification Motion"). (D.I. 1502). On July 8, 2004, Paul Hastings responded in opposition to the Disqualification Motion (D.I. 1624) and voluntarily filed the Final Affidavit fully disclosing the Clark Fork connection. (D.I. 1625). On the same day, NorthWestern, represented by Greenberg Traurig, joined in Paul Hastings' response to the Disqualification Motion. On July 9, 2004, the Committee filed its response in opposition to the Disqualification Motion. (D.I. 1632).

21. On July 23, 2004, the Qualification Order denied the Disqualification Motion. The Qualification Order held that while Paul Hastings should have initially disclosed the Clark Fork connection, that the failure to disclose until later in the case did not mandate the disqualification of counsel in part because a disclosure had been made to the United States Trustee at the outset of the case and that even with the disclosure an actual conflict did not exist. See Qualification Order ¶3.

22. On August 2, 2004, Magten filed it Motion for Reconsideration (the "Motion for Reconsideration") (D.I. 1799) of the Disqualification Motion asserting that a factual error gave

cause for reconsideration. On August 10, 2004, Paul Hastings responded in opposition to the Motion for Reconsideration admitting a factual error, but contending that the corrected fact did not change the lack of an actual conflict. (D.I. 1844).

23. On August 19, 2004, the Order ("Reconsideration Order") (D.I. 1942) was entered denying the Motion for Reconsideration on the grounds that (i) the incorrect fact did not have a "determinative bearing" on the Disqualification Motion, (ii) there were "separate and sufficient grounds for denying the [Disqualification] Motion" and (iii) "no manifest justice [sic] has occurred" giving rise for a Motion to Reconsider. See Reconsideration Order ¶ 4.

24. On August 24, 2004, apparently dissatisfied with the Court's two decisions on the matter, Magten filed an appeal of the Qualification Order and the Reconsideration Order. (D.I. 1975). The appeal is pending in the District Court of Delaware. However, Magten did not file a stay pending the appeal or take any other action from August 24, 2004 through January 3, 2005 objecting to Paul Hastings' incurrence of additional fees and expenses in its representation of the Debtor.

## RESPONSE TO CERTAIN SPECIFIC POINTS RAISED BY MAGTEN

### I. Appellate Review of the Qualification Order Does Not Stay the Final Fee Application

25. There is no other party-in-interest raising an objection to the Final Fee Application. Paul Hastings has complied with the Fee Procedure Order and filed monthly statements, interim applications and the Final Fee Application. Each of the monthly statements and interim applications have been reviewed by the Trustee, Committee and Fee Auditor and were publicly available for others to review. Apparently in agreement with the Trustee, Fee Auditor and Committee, Magten does not raise any issues related to the reasonableness of the fees and expenses and general compliance with the Fee Procedures Order and local rules format.

Instead, Magten raises two primary issues. The first is that the filing of the appeal should have the effect of staying this Court's review and consideration of the Final Fee Application.

26. To grant Magten this form of relief would in effect be granting Magten a prejudgment attachment or a stay pending the appeal against Paul Hastings. Courts have held that a movant seeking this form of relief must establish four elements: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3rd Cir. 1991).

27. As Magten itself noted, the Court exercised its discretion in denying Magten's motion to disqualify Paul Hastings. See Objection ¶1. As a result, to prevail on appeal, Magten must show that Judge Charles Case abused his discretion in issuing the Qualification Order. See Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.), 304 F.3d 246, 250 (3rd Cir. 2002) ("[w]e review a bankruptcy court's decision to approve an application for employment for abuse of discretion.") There is absolutely no evidence in the record which in any way suggests that Judge Case abused his discretion in making his ruling. Therefore there is not a large probability that Magten will succeed on its appeal.

28. Moreover, Magten can not demonstrate how it will suffer irreparable injury if the Final Fee Application is granted. The fact that Paul Hastings is properly compensated for its services, does not have any impact on Magten's claims or its pending litigation. However, sustaining Magten's Objection will have an immediate and adverse effect against Paul Hastings. It is undisputed that Paul Hastings has properly complied with the Fee Procedures Order and that

it was a direct result of Paul Hastings' representation that NorthWestern was able to successfully confirm its plan of reorganization. To stay or otherwise withhold Paul Hastings' compensation for these completed services on the basis that a single, unhappy creditor is pursuing an appeal is inequitable and will cause direct harm to Paul Hastings. The payment of these fees will not cause any harm to NorthWestern, its creditors under the confirmed plan, or the reorganized company due to the fact that NorthWestern supports the payment of the fees and expenses and has included payment of amounts due under the Final Fee Application in its budgets and projections. Lastly, there is no public purpose served in allowing one disgruntled creditor to disrupt the Fee Procedures Order on the basis that it has a pending appeal when all other parties-in-interest, including the Fee Auditor, do not oppose the Final Fee Application.

29. In support of Magten's assertion that the Final Fee Application should be denied until the appeal is heard, Magten cites two obscure opinions. In re Keravision, Inc., 273 B.R. 614 (N.D. Ca. 2002) (the "Keravision Case") and In re Domino Investments, Ltd., 82 B.R. 608 (Bankr. S.D. Fla. 1998) (the "Domino Case"). The only reference in the Keravision case refers to the District Court's recitation of the facts that the bankruptcy court did not allow the Debtor's counsel to apply its prepetition retainer to its postpetition fees. In re Keravision Inc., 273 B.R. at 615. However, this fact is not the subject matter of the appeal and does not have any basis in the district court's ultimate holding "that a law firm is not per se disqualified from employment solely because one of its partners was an officer of the debtor." Id. at 619. The Domino Case comes a little closer to relevance, in that the bankruptcy court does deny interim fee applications and appeals in the case were pending (although none of the appeals related to employment or compensation issues); however, in rendering its decision, the bankruptcy court expressly states "[b]y withholding interim compensation, I intend to discourage further procrastination in the

administration of this five-year-old case" and "[a]n accurate evaluation of the applications before me is possible only when *all final* applications are before the court . . . " In re Domino Investments, Ltd., 82 B.R. at 609 (emphasis in the original). Accordingly, Paul Hastings urges this Court to disregard Magten's cited cases as precedent to withhold a determination of the Final Fee Application.

30. Magten's only two other cases related to this issue are In re Prince, 40 F.3d 356 (11th Cir. 1994) (the "Prince Case") and In re Federated Department Stores, Inc., 44 F.3d 1310 (6th Cir. 1995) (the "Federated Case"). In the Prince Case, the 11th Circuit examined whether the district court's affirming of the bankruptcy court's award of fees was appropriate. In its decision, the 11th Circuit looked to actual injury or prejudice to the Debtor's estate in denying fees and held that due to the existence of "intolerable conflicts of interest", the estate was prejudiced by the debtor counsel's representation and therefore denied fees. In re Prince, 40 F.3d at 361. Unlike the Prince Case, this Court has specifically found that no actual conflict exists and accordingly there is no basis to deny fees under Section 330 of the Bankruptcy Code.

31. The Federated Case is the closest case on point, but still does not support Magten's position. In the Federated Case, at the beginning of the case the Trustee appealed Shearson Lehman Inc.'s ("Lehman") initial retention order asserting an actual conflict of interest due to prior representation and three years later when the bankruptcy case was confirmed and Lehman was awarded its fees and expenses, the Trustee appealed the award of fees and expenses. In re Federated Dep't Stores, Inc., 44 F.3d at 1312. Ultimately the 6th Circuit consolidated the appeals and concluded that Lehman did have an actual conflict of interest, but due to the unique circumstances of the case allowed in part Lehman's fees and expenses. Id. at 1320. The Federated Case does illustrate that retention and compensation are distinct issues.

Although Magten is appealing the Qualification Order, there is no contrary ruling or evidence to suggest that Paul Hastings does not qualify under Section 327(a) of the Bankruptcy Code. Therefore, for this Court to hold the Final Fee Application in abeyance due to the mere fact that Magten appeals this Court's prior determination would be in effect prejudging the appeal without Magten having satisfied the elements necessary to obtain a stay.

32. The only party that might benefit by the Court's denial or holding the Final Fee Application in abeyance is Magten and the benefit comes in the form of theoretical additional leverage over NorthWestern and Paul Hastings in the wind down of the bankruptcy estate and the pending appeals and litigation. The extreme remedy sought by Magten is not necessary in this bankruptcy case. Magten has preserved its rights in the form of the appeal. Paul Hastings will continue to be subject to the jurisdiction of this Court and the district court until the appeal is concluded. Accordingly, to the extent any appeal is successful, at that time the district court and this Court can fashion an appropriate remedy.

33. At this point, NorthWestern's Second Amended and Restated Plan of Reorganization has been confirmed and substantially consummated. See Notice of Substantial Consummation of the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated December 29, 2004. (D.I. 2519). The Debtor is making great progress in resolving the few remaining issues to be resolved prior to closing this bankruptcy case. It is the Debtor's hope that by mid to late summer it will be able to present an order closing the Chapter 11 case. This process should not be delayed by Magten's effort to hold hostage approval of the Final Fee Application.

## II. Paul Hastings Should be Compensated for the Services Rendered and the Expenses Incurred With Respect to the Matters Noted by Magten

34. Magten's second argument is related to the scope of services that Paul Hastings

preformed on behalf of the Debtor. In the Objection, Magten asserts that Paul Hastings' voluntary decision to remove itself from the Magten Adversary Proceeding somehow acts to per se preclude Paul Hastings from any and all Magten matters. See Objection ¶¶19, 27, 29 and 30.

35. As Paul Hastings has consistently represented to all parties-in-interest and the Court, Paul Hastings has never believed that its prepetition representation of Clark Fork created an actual conflict in the bankruptcy case.[6] However, once the issue was raised, Paul Hastings did file supplements with the Court to further disclose this connection. See Second Supplement and Final Affidavit. The confusion seems to stem around the fact that soon after Magten filed the lawsuit against Paul Hastings, Paul Hastings made a completely voluntary decision – which was disclosed to the Court at the June 2, 2004 hearing and memorialized in the Second Supplement – to transfer all matters relating to the Magten Adversary Proceeding to Greenberg Traurig and disclosed that Paul Hastings was no longer handling matters related to the Magten Adversary Proceeding. See June 21, 2004 Transcript pgs. 69-70 and Second Supplement ¶13. (D.I. 1653). The Second Supplement further explained this decision by specifically stating that the decision was a direct result of the filing of the Magten Paul Hastings Litigation and in order to avoid any potential or appearance of any conflict of interest. See Second Supplement ¶13.

36. However, Magten seeks to use Paul Hastings' voluntary decision offensively by pointing to other matters in the bankruptcy case and asserting that these other matters had some connection to the Magten Adversary Proceeding and thus should be disallowed. This argument fails on two grounds. First, Paul Hastings was very specific on the matter that it would defer to Greenberg Traurig – namely, the Magten Adversary Litigation. Second, there was no court

---

[6] At the commencement of the case, Paul Hastings disclosed the Clark Fork connection and the Trustee determined that this was a natural representation which did not give rise to an actual conflict. See July 23, 2004 Transcript pgs.

order, ruling, recommendation or other mandate requiring Paul Hastings to remove itself from the Magten Adversary Litigation. In fact on July 23, 2004, the Qualification Order specifically denies the Disqualification Motion. Therefore, it was entirely within Paul Hastings' and NorthWestern's discretion to determine the appropriate scope of Paul Hastings' representation. Indeed, Paul Hastings made it very clear, both in discussions before this Court and in actions of which Magten was aware, that Paul Hastings remained as general bankruptcy and restructuring counsel for the Debtor and would take the lead in addressing all issues in connection therewith.

37. Magten's assertion that Paul Hastings should not be paid for certain items which Magten, in its determination, identifies as "matters relating to the Magten Adversary Proceeding" (emphasis supplied) has no legal basis for disallowance. See Objection ¶19. It was Paul Hastings that created the Magten Adversary Proceeding category and determined that it would not represent NorthWestern with respect to such litigation because of the Magten Paul Hastings Litigation. Therefore, this Court should defer to Paul Hastings' determination that it has properly segregated any time related to the Magten Adversary Proceeding.[7]

38. Paul Hastings carefully reviewed Magten's Objection and finds two primary areas in contention. The first is services relating to the Paul Hastings' category "Relief From Stay Proceedings". Paul Hastings created this separate matter number for services relating generally to motions under 362 of the Bankruptcy Code.[8] Magten's position that Paul Hastings

---

27-31. Further the Committee with full knowledge of "going flat" transaction and Paul Hastings' involvement determined that there was no conflict. See July 23, 2004 Transcript pg. 33.

[7] Notwithstanding this position, Paul Hasting did conduct a further review of its fee statements and summaries and pursuant to Section III herein has agreed to voluntary reduce its fees.

[8] In NorthWestern's case, the Debtor had to respond to a very limited number of relief stay motions and it was appropriate for Paul Hastings and other counsel simply to have one lift stay motion sub-file rather than to sub divide the work into numerous files. This procedure conformed to the Trustee guidelines, was approved by the Assistant Trustee responsible for the NorthWestern bankruptcy case, and has been approved by the Fee Auditor.

should not be compensated for services related to the Lift Stay Motion is without merit. Magten's Lift Stay Motion was filed on March 17, 2004 – approximately two months prior to the filing of the 328(a) Statement and the Magten Paul Hastings Litigation. The Lift Stay Motion itself involved solely whether or not the stay should be modified to allow Law Debenture and Magten to proceed with the adversary proceeding. The Lift Stay Motion did not involve a substantive determination of the underlying allegations of the adversary case.

39. Similarly, it is appropriate for Paul Hastings to have acted as counsel to NorthWestern with respect to the joinders filed by the McGreevey Class Claimants and Comanche Park. Contrary to Magten's assertions, the work performed with respect to the joinders filed by the McGreevey Class Claimants and Comanche Park was not intertwined or performed in unison with responding to Magten's Lift Stay Motion.[9]

40. The other area Magten disputes is Paul Hastings representation of NorthWestern in the confirmation process and specifically Magten's objections to confirmation. Magten's suggestion that Paul Hastings should not be compensated for the services rendered and expenses incurred in opposing Magten's objections to confirmation of NorthWestern's plan is similarly without merit. The fact that Magten has over-plead its appeal of the confirmation order to effectively include the issues raised in the Magten Adversary Proceeding should not now be used as a basis for denying compensation for work performed on behalf of the Debtor and which was clearly beneficial to the Debtor's estate. Paul Hastings is not charged with the foresight of what

[9] Clearly the tasks were not preformed in unison as Paul Hastings responded separately to Magten's Lift Stay Motion on April 2, 2004 and responded to each of the McGreevey Class Claimants and Comanche Park joinders to the Lift Stay Motion on April 7, 2004. (D.I. 1070). Further, after the Court denied each of the joinders, McGreevey Class Claimants filed a separate motion for relief from the automatic stay on April 27, 2004 (D.I. 1163) and on April 29, 2004 Comanche Park initiated its own motion for relief from the automatic stay. (D.I. 1174). NorthWestern separately responded to each of these new motions for relief from the automatic stay on May 12, 2004. (D.I. 1279, 1280). All of these events were prior to the filing of the Magten Paul Hastings Litigation.

Magten's ultimate tactics would be following defeat of its efforts to recover on its claim in a manner grossly in excess of the value of its claims and to obtain different treatment from other similarly situated creditors.

41. Clearly Paul Hastings, as lead counsel for the Debtor and in presenting the reorganization plan for confirmation, had to examine and analyze issues raised by objecting parties, including those objections of Magten. Through the summer and early fall of 2004 when Paul Hastings was advising NorthWestern and moving the plan toward confirmation, Magten had actual knowledge of Paul Hastings' role and responsibilities and at no time expressed any objection thereto. Magten should not now be allowed to implement a new tactic to deny reasonable and appropriate compensation for services rendered and expenses incurred by Paul Hastings.

## III. <u>Additional Specific Items</u>

42. Magten has raised specific objections to any compensation for work performed by Paul Hastings in response to the Section 328(c) Statement, Magten Paul Hastings Litigation, and preparation of the Second Supplement. Without admitting that it may have been inappropriate to bill the Debtor for any or all these services, Paul Hastings will reduce the Final Fee Application by the identified amounts of $2,999.50 with respect to the Section 328(c) Statement, $1,691.00 with respect to the Magten Paul Hastings Litigation and $1,805.00 with respect to the Second Supplement, for a total adjustment of $6,499.50.

## IV. <u>Paul Hastings has Satisfied its Burden for Approval of the Final Fee Application</u>

43. The appropriate standard for this Court to consider is whether Paul Hastings' Final Fee Application complies with Section 330(a) of the Bankruptcy Code and 2016(a) of the Bankruptcy Rules. Paul Hastings has satisfied all of the appropriate standards and disclosures

applicable in the Third Circuit. All of Paul Hastings services rendered and expenses incurred benefited NorthWestern's estate and were necessary to the administration of the estate. In further support of this position, Paul Hastings points to the lack of any objection by any other party-in-interest, including the Fee Auditor.[10]

44. In addition to making the appropriate showing in the papers filed in support of such application, Paul Hastings also has made the appropriate showing on an interim basis to the satisfaction to all other creditors in NorthWestern's bankruptcy case, the Assistant Trustee responsible for the case and the Fee Auditor. Throughout this case, Paul Hastings has endeavored to comply with the Trustee guidelines with respect to all of its fees and expense applications; at no time has any party-in-interest indicated otherwise.

45. Magten's efforts to "nitpick" through the examples presented on pages 16 and 17 of its Objection are simply to belittle the work performed by Paul Hastings and to denigrate Paul Hastings successful restructuring efforts on behalf of NorthWestern and its overall creditor constituency.

**CONCLUSION**

WHEREFORE, Paul Hastings respectfully requests that this Court enter an order:

(a) denying the Objection in its entirely:

(b) approving and granting final allowance and award of $13,614,162.25[11] for compensation of professional services rendered to the Debtor during the period from September 14, 2003 through and including November 1, 2004;

---

[10] Although at the time of the filing of this response the Fee Auditor has not formally filed its final recommendation to the Court, Paul Hastings understands that other than informal comments, the Fee Auditor will be filing its recommendation in support of the Final Fee Application by the hearing on the Final Fee Application.

[11] This total amount represents the Final Fee Application amount of $13,620,661.75 for professional fees minus $6,499.50 representing the aggregate amount of voluntary reductions provided for in Section III herein.

(c) approving and granting final reimbursement and award of Paul Hastings' out-of-pocket expenses incurred in connection with the rendering of such services during the period September 14, 2003 through and including November 1, 2004 in the amount of $916,531.68; and

(d) granting such other and further relief as this Court deems is just and proper.

447036

Dated: Wilmington, Delaware
January 19, 2005

Respectfully submitted,

PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Jesse H. Austin, III
Kristine M. Shryock
Telephone: (404) 815-2400

and

MORRIS, NICHOLS, ARSHT & TUNNELL

______________________________
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200

Counsel for Paul, Hastings, Janofsky & Walker, LLP